## Chicago Union Traction Company v. George W. Brethauer.

### Gen. No. 12,116.

1. LOSS OF PROFITS—*what competent in proof of, in action of trespass for unlawful ejection.* In such case it is proper, where the declaration sufficiently avers special damages, to show that the plaintiff was a jeweler and that his profits during the months of the year preceding the accident were of certain specific sums and that during the months following the accident were of certain other specific sums less than before the accident.

2. RES GESTÆ—*what part of.* Conversations between the plaintiff suing for damages for alleged unlawful ejection from a traction car and the conductor which tend to show whether the plaintiff was upon the car in good faith claiming to be a passenger or whether he was there "looking for trouble," are competent and form a part of the *res gestæ.*

3. PASSENGER—*when ejection of, unlawful.* The ejection of one riding upon a traction car and asserting his right so to ride by virtue of a transfer, is unlawful, where such right exists by virtue of a valid ordinance, notwithstanding such ordinance at the time of such ejection is in dispute and is being made the subject of test litigation.

4. PASSENGER—*rights of, upon unlawful ejection.* A passenger who is about unlawfully to be ejected from a traction car cannot resist, but must either pay his fare or peaceably leave the car, but he may recover damages for the indignity suffered in so being re-

Traction Company v. Brethauer.

·quired to leave the car, and likewise for any unnecessary force that may be used in his ejection.

5. TRESPASS—*lies for unlawful ejection of passenger by agent of corporation acting under instructions.* Trespass is the appropriate form of action where the action is instituted for the unlawful ejection of a passenger whose ejection is by an agent of the defendant traction company acting pursuant to orders received from his principal.

6. VERDICT—*when not excessive.* A verdict of $10,000 held not excessive in an action for unlawful ejection to a passenger where it appears that by reason of such unlawful ejection the plaintiff suffered permanent injuries to his mind and body, that his memory, his nerves of motion, his voice, his hearing and his eye-sight became permanently affected and his earning power largely decreased.

Action of trespass for unlawful ejection. Appeal from the Superior Court of Cook County; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed December 4, 1905.

**Statement by the Court.** The appellee secured a judgment of $10,000 against the appellant in June, 1904, in the Superior Court of Cook county, on the verdict of a jury. From this the appellant has prosecuted this appeal, and has assigned as error and argued that the judgment and verdict were against the law and the weight of the evidence; that the case should have been withdrawn from the jury by a peremptory instruction to find for the defendant; that there are variances between the proof and the declaration, calling for a reversal of the judgment; that an instruction especially framed with reference to such alleged variance, that should have been given, was refused; that evidence was improperly admitted and evidence improperly excluded, and, finally, that the damages allowed are not only excessive, but so grossly excessive as to be indicative of passion and prejudice on the part of the jury, and to taint the whole verdict beyond the possibility of a cure by *remittitur.*

The suit was brought by appellee for damages for being wrongfully ejected from the cars of appellant company, and by the means used in such ejection physically injured. The ·declaration originally contained seventeen counts, but the

plaintiff (the appellee here) abandoned seven of them, and they were stricken out. Those retained were originally numbered 1, 3, 4, 6, 7, 8, 9, 10, 14 and 17. The first charges that the plaintiff became a passenger on one of the defendant's Lincoln avenue cars going northwesterly January 12, 1902; that he paid to the conductor of the Lincoln avenue car the fare of five cents and asked for a transfer ticket to enable him to be carried in a northerly direction on a Halsted street car of the defendant; that the conductor gave plaintiff a transfer ticket; that plaintiff left the Lincoln avenue car at Halsted street and entered the next Halsted street car going north; that while the Halsted street car was running at a high rate of speed, its conductor demanded of the plaintiff a fare; that plaintiff gave the conductor the transfer tickets he had received in the Lincoln avenue car; that the conductor received them but refused to accept them in payment of the fare, and demanded that plaintiff should pay a fare in money; that the plaintiff explained to the conductor the circumstances under which he received the transfer tickets, and remonstrated with him against the demand for cash fares; that thereupon the said conductor assaulted the plaintiff and "with great, unnecessary and unreasonable force and violence" dragged the plaintiff through and out of the car, and ejected him while the same was moving at a high rate of speed, and thereby threw the plaintiff on the ground, to his great physical injury, etc., and also with the result that he was hindered and prevented from transacting and attending to his affairs, "and lost and was deprived of divers great gains, profits and advantages, etc., and from carrying on his business as a jeweler, from which employment and business the plaintiff derived an income and profit of five thousand dollars a year," and was permanently disabled, etc.

The allegations of the 3rd, 4th, 9th and 17th counts are not substantially different from those of the first. The 6th and 10th counts set out the same matter, except that they omit the averment that the ejection took place while the car was moving.

The 7th and 8th counts contain in addition to the allega-

tions found in the 6th and 10th, an averment that in December, 1885, the city council of Chicago passed an ordinance, afterward accepted by the North Chicago City Railway Company, of which the defendant is the successor, giving permission to said railway company to construct and maintain a railway from its tracks in Clybourne avenue on and along Halsted street north to Fullerton avenue, so as to connect with its tracks on Lincoln avenue, and providing that "the rates of fare for any distance on the tracks of said Company, whether on the lines herein authorized or heretofore constructed, shall not exceed five cents for each passenger for any continuous travel at one ride;" and also an averment of another ordinance of the city council of Chicago, providing the rate of fare on any street railway within the limits of the city of Chicago, shall not exceed five cents, and that "at any point where any line of any street railway owned, leased or operated by any person, firm or corporation, does now or shall hereafter, within the limits of the city of Chicago, join, connect with, cross, intersect or come within the distance of two hundred feet of any other line of street railway owned, leased or operated by the same person, firm, company or corporation, any passenger who shall have paid his fare on any street car run or operated on such first mentioned line, shall, on his request, be entitled to demand and receive from the person or persons, in charge of such street car on which he has so paid his fare, a transfer ticket which shall entitle him, without further charge, to be carried on any other one line adjoining, connecting, crossing and intersecting and owned, leased or operated by such person, firm or corporation, for a continuous trip of any distance within the limits of the city of Chicago, if used within one hour after the same is issued at the point or place for which such transfer ticket was issued."

This last ordinance so set up is the so-called "Transfer Ordinance," passed first by the council in 1870, re-enacted in 1897, and against the contention of the Chicago Union Traction Company, and at the suit of the city of Chicago, found valid on appeal from a justice's judgment rendered in

December, 1901, by the Criminal Court of Cook County in April, 1902, and by the Supreme Court in December, 1902.

The 14th count merely charges an assault and battery of the plaintiff while conducting himself peaceably as a passenger, by one of the servants of the defendant, acting within the scope of his authority as such servant.

The defendant pleaded the general issue and two special pleas to this declaration, the special pleas being variations of the plea *molliter manus imposuit,* alleging that plaintiff had refused to pay the usual and customary fare, and was staying in the defendant's car without the defendant's consent, and refused to leave when requested, and that defendant's servant, after gently laying hands on him to remove him, used no more force than was necessary to so do and to defend himself against the resistance and assault of the plaintiff. These pleas were traversed by replications in the nature of replications *de injuria* (although inartificially drawn) and the issues thus made up.

On the trial, over the objection of appellant, the appellee's daughter, one Mrs. Paus, was asked to give a conversation she said she had heard between her father and the conductor on the Lincoln avenue car, and answered that her father, on receiving the transfers, asked the conductor if they were good on a Halsted street car; that the conductor answered affirmatively, and that her father asked him a second time, and the conductor said, "Yes, how many do you want?"

The plaintiff himself, also over objection, was permitted to testify to the same conversation.

The plaintiff was asked and over the defendant's objection was allowed to answer questions as to what he made on the average in his business per month during the year preceding the accident, and how much he had made per month since he went back to it.

A physician who had attended the plaintiff immediately following the accident, and had seen him several times since, was allowed, over objection, to say that he did not consider plaintiff's mental condition as good after the accident as it was before.

Morris Roach, the conductor on the Halsted street car, was a witness for defendant and was asked by defendant's counsel whether "at the time of the occurrence, January 12, 1902, the corner of Lincoln avenue and Halsted street was a transfer point from the Lincoln avenue car, going north on Halsted street." He answered, "No," but on objection and motion by the plaintiff the answer was stricken out by the court.

Both the ordinances hereinbefore described, as set forth in the 7th and 8th counts of the plaintiff's declaration, were offered in evidence by the plaintiff on the trial, and over the objection of the defendant, received.

One instruction offered on behalf of the defendant was refused, seventeen others so offered by the defendant were given. None was asked on behalf of the plaintiff. A motion for a new trial was denied by the court, and also a motion in arrest of judgment. Proper exceptions were taken to all the actions of the court complained of.

JOHN A. ROSE, ALBERT M. CROSS and HENRY W. BRANT, for appellant; W. W. GURLEY, of counsel.

LOUIS A. HEILE, LORIN C. COLLINS and WILLIAM MEADE FLETCHER, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The objections made to the judgment in this cause, based upon the rulings on the evidence, we have carefully examined, all the more carefully because the damages hereinafter discussed, seem to us very large, and the question is of great importance, therefore, whether any thing was improperly admitted in evidence tending to mislead the jury and swell the amount allowed. But we do not find in the rulings any error. The most serious question, as it seems to us, arises on the introduction of the testimony of the plaintiff that he was making in his business (that of a wholesale jeweler) each month during the year preceding the accident $500, and that since he went back to it he had made only $50 to $75 a month in it. This was specifically objected to on the ground that

there was no sufficient basis for it in the pleadings, and on the further ground that· a comparison of the profits in a jewelry business before and after the occurrence was not material to the question of damages. It is forcibly argued that such profits were dependent on too many contingencies to make the comparison of any value. What we might think of the question if it were *res integra* in this court, does not matter, for we think that the authorities in this State justify the ruling of the trial judge admitting the testimony and holding that the objection to it went merely to its weight and to its being a subject for cross-examination.

There can be no doubt that the declaration contained sufficient averments of a special damage in the loss of profits in business to allow the introduction of the testimony, if it were otherwise competent, and that it was so seems to us to be held in Chicago & Eastern Ill. R. R. Co. v. Meech, 163 Ill., 310, and Chicago City Ry. Co. v. Carroll, 206 Ill., 318.

The Illinois cases cited by appellant on this point seem to rest principally upon the want of averments of special damage in the pleadings. In Chicago & Eastern Ill. R. R. Co. v. Meech, the court says, speaking of similar evidence in relation to the profits of a contracting and employing painter : "It may be that the testimony in the case at bar in regard to prior earnings was entitled to little weight, owing to the fact that it was confined to the earnings of but a single year, but that is a question of weight of evidence and a matter that was open for argument before the jury and the courts below; and if appellants had reason to suppose that the year immediately preceding the accident was for any cause an exceptional year, they could have shown that fact on cross-examination, or by the introduction of testimony."

In the case at bar the evidence introduced seems to us of little weight, because by cross-examination it was made to appear that the appellee had gone through bankruptcy and had lost practically all his property by mortgage foreclosure the year before the injury occurred. This seems sufficient reason for a marked decrease in profits, and it must be presumed furnished ground for argument to the jury on the

weight of the evidence in chief of the plaintiff on this subject.

We see no error in the admission of Dr. O'Neill's testimony as to his opinion of the plaintiff's mental condition before and since the injury.

It is strenuously insisted that it was error to allow evidence of the conversations concerning transfers between the plaintiff and the conductor of the Lincoln avenue car. We do not agree with this. Whether or not the plaintiff had entered defendant's Halsted street car as a passenger, in good faith, supposing that he held for himself and the party under his charge tickets entitling them to a ride thereon, or, on the other hand, was a mere trespasser trying to defraud the company, or even, in current phrase, "looking for trouble," in order to test the validity of a disputed ordinance, was a question which was material in several views. Its answer was material in throwing light on the animus of his conduct in the Halsted street car, in affecting the probability concerning disputed matters of fact in that conduct and in properly ascertaining the measure of damages for an ejection. Moreover, we think that this conversation and the transaction between the plaintiff and the Lincoln avenue conductor were in fact a part of the *res gestæ*.

It is true, as claimed by appellant, that there are many cases in which acts and conversations removed in time from the main occurrence under investigation, no further than the conversation between the appellee and the Lincoln avenue conductor was removed from the ejection, have been held not part of the *res gestæ* because not concurrent with nor "illustrating, explaining or interpreting," as it is expressed in Chicago City Ry. Co. v. Uhter, 212 Ill., 174, the transaction immediately in issue. But it is not concurrence in time alone, nor separation in time alone, which has been made the test, as an analysis of the cases will show. The effect of a transfer ticket on one car cannot be altogether disjoined from the circumstances attending its reception on the connecting car, without violence to common sense. If it is properly used, in accordance with the rules, the reception and attempted use of it are substantially parts of the same transaction.

We think our view of the admissibility of this evidence is founded on reason and analogy and fully borne out by authority in Illinois.     Central R. R. Co. v. Davenport, 177 Ill., 110; Pennington v. Ill. Central R. R. Co., 69 Ill. App., 628; Wabash R. R. Co. v. Kingsley, 78 Ill. App., 236; Illinois Central R. R. Co. v. Harper, 83 Miss., 560; New York, L. E. & W. R. Co. v. Winter, 143 U. S., 60; and many other cases.

Nor was there any error in allowing the ordinances set up in the declaration to be put in evidence.     Counsel for appellant seems to be under a misapprehension in regard to the effect of these ordinances.     The Supreme Court has decided (Chicago Union Traction Company v. City of Chicago, 199 Ill., 484) that the transfer ordinance is valid.     That means, of course, that it was valid and operative from its passage. Its validity did not depend on the decision of the court which merely announced it.     The appellant chose to claim and consider it invalid, but it did so at the risk of its view of the law being, as it turned out to be, mistaken.

To eject against his will from the Halsted street car going north a person who had paid fare on the immediately preceding Lincoln avenue car going northwesterly, and who, boarding the Halsted street car at the intersection of the streets, offered evidence of such payment, was on January 12, 1902, an illegal and unlawful act, whatever litigation the company or other people were carrying on for the purpose of "testing the question as to the liability of appellant for refusing such transfers."

The illegality and unlawfulness of the ejection was a proper matter for proof, both as affecting the conduct of the parties and the measure of damages.

"We fully recognize the doctrine," said the Appellate Court of the Third District, "that a different rule obtains when the relation of passenger and carrier exists where a person is ejected from a train, than where the person is a trespasser or has not a right on the train," (Wabash R. R. Co. v. Kingsley, 78 Ill. App., 236), and the proposition is good law and good sense.

It is true that the fact that an ejection is illegal and unlawful does not justify the passenger sought to be ejected in interposing resistance and counter force. But this does not make the ejection any the less unlawful, nor prevent the appellant from being "a law breaker." Counsel complain, in the statement of the case, that the company was put into the position before the jury of a law breaker by the introduction of the ordinances, and in the brief declare that the ejection was "rightful." The ejection was not rightful, and the defendant broke the law in authorizing it and the defendant's servant in executing it. The very reason given by the courts for holding that a passenger should not resist an unjustifiable demand of the conductor that he should leave the train or pay fare, is that he may recover at law, besides all other losses, damages for the indignity offered him in expelling him from the train.

If the expulsion were "rightful" there could be no recovery for any indignity in such expulsion. It is true that the expelled passenger should not physically resist, but should submit to the indignity in the interest of peace and good order, and that in consequence, for physical injuries received in resisting, if he does resist, he cannot recover unless there is used against him unreasonable or unnecessary force or he is subjected to unreasonable and unnecessary danger. But the jury were given this legal proposition in three instructions— the 14th, 15th and 18th—made indeed more favorable to the defendant than they ought to have been in our opinion, by the addition of a further statement that the conductor "had the right to use whatever force was necessary in removing said plaintiff from the car" if he refused to leave when requested, a supposed corollary of the doctrine that it was the duty of the plaintiff to leave and not to resist, which we do not think properly follows. But its statement in this form if incorrect was certainly not disadvantageous to the defendant, but to the plaintiff. No instruction minimizing or derogating from the doctrine claimed by the appellant was given to the jury. It must therefore be assumed by us that the verdict of the jury involved their belief—in the language

of the 18th instruction given them at the request of defendant—that the conductor's conduct amounted "to intentional wrong or was of such a reckless character" as showed that he had "an utter disregard of the rights or safety of other persons." In our opinion the jury would be justified in so believing if they also believed that the car was moving when the plaintiff was ejected, or if they believed that force and violence greater than was reasonably necessary to eject the plaintiff were used on him, and that his injuries were received bcause of such unnecessary force and violence, and not because of any resistance that he may have made.

It is hardly necessary, in view of the conflict in the evidence and the verdict of the jury, for us in passing on the question raised on the effect of the evidence as a whole by some of the assigned errors by appellant, to go farther than the question of whether the jury were warranted in finding that the car was moving at the time of the ejection, for there could be no justification for ejecting the plaintiff from a moving car, and if there was evidence which, if believed by the jury, warranted them in finding that this was done, we cannot, in the absence of any special findings, assume that their verdict was not based on it.

Before discussing the weight of the evidence and the sufficiency of the case made by the plaintiff, we must allude to the point made by appellant that the conductor of the Halsted street car was erroneously prevented from testifying, as it is put by appellant's brief, "that the corner of Lincoln avenue and Halsted street was not a transfer point under the regulations of the defendant company."

Farther on in its brief appellant says: "It was necessary to permit us to show that this conductor whose actions were complained of knew that fact (*i. e.* that this point was not a transfer point) and was acting in accordance with appellant's instructions and orders."

We think that it was proper to allow the defendant to show that the conductor had instructions not to recognize the transfer in question, and, as appellant itself points out, the Lincoln avenue conductor testified to this effect concerning

Traction Company v. Brethauer.

the regulations of the company without objection, and the division superintendent, McGowan, was allowed so to testify over objection.   We think also that such is the purport of the testimony of Roach, the Halsted street conductor.   The contrary view seems to us a misconception.   By examination of the record we find that the question first asked Roach was, "At the time of this occurrence on the 12th of January, 1902, state whether or not the corner of Lincoln avenue and Halsted was a transfer point from the Lincoln avenue car going north on Halsted."   The question was objected to and the objection overruled.   The witness answered "No." Then the question was put to him:   "State whether or not, prior to the 12th of January, 1902, and at that time you had any instructions regarding the acceptance of a transfer from Lincoln avenue cars north on Halsted?"   Objection was made to this question, but before any ruling was made on it the trial judge, who had evidently been reconsidering his ruling on the prior question, said that in *that* ruling he believed he was wrong, because the question was not as it should have been, "whether under the rules of the company transfers were received at that point," but "whether it was a transfer point," which might be a conclusion.   He therefore reversed his ruling and struck out the answer "No" of the witness above stated.   In this we think the court was right.   The next question above indicated was then repeated without objection, and was answered by the witness "We had."   Afterwards the witness, apparently without further questioning, seemed to be about to give the nature of the instructions, and was stopped by general objection, which might well have been on the ground that his attempted statement was responsive to nothing.   This question was then asked him:   "State whether or not on the 12th of January, 1902, at the time of this occurrence, you, acting under your instructions, accepted transfers from Lincoln avenue cars north on Halsted?"   This colloquy then took place:

"MR. FLETCHER: Objected to as calling for a conclusion and immaterial.

THE COURT: Yes, *it is not immaterial.* It is the *form* of the question; the objection is sustained. (Exception.)

MR. NEELY: Mr. Roach, on the 12th of January, 1902, and just prior thereto, what were your instructions?

MR. FLETCHER: Objected to as being immaterial.

THE COURT: It appears from the evidence that they were in writing. * * He (*i. e.* the superintendent) said some instructions, as I remember it, were in writing, and any conductor that did not understand it, he went to him and he explained them to him verbally.

MR. NEELY: I will put a question that I think will straighten it out, your Honor. * * * Mr. Roach, state whether or not you were acting under instructions as to transfers offered from the Lincoln avenue line to the North Halsted street line? You can answer it yes or no.

MR. FLETCHER: I object to it as calling for a conclusion.

THE COURT: Overruled.

MR. FLETCHER: Exception.

ANSWER: Yes, sir, I was acting under instructions from the company.

Q. From whom did you get those instructions?

A. Those instructions were given by a bulletin board in our barn where we start from to go out on the line.

MR. FLETCHER: I move to strike out everything.

THE COURT: The answer may stand."

The witness then proceeded without further objection to say that if they did not understand their instructions, they would ask the foreman to tell them what to do; that he had instructions from the foreman as to what to do about transfers from Lincoln avenue to North Halsted street; that he got them both from the bulletin at the office and from the man that broke him in as a student a year and a half before, and that there had been no change since that time on that instruction on that transfer point.

From this somewhat extended excerpt from the record it will be clearly seen that the court did not rule on the direct question, "What were your instructions?" but that counsel for appellant withdrew it and asked another, and that the answer to this last question was evidently understood by all,

undoubtedly including the jury, to mean that in refusing the transfers in question the witness was obeying the rules of the company. We think, therefore, that the appellant has no ground of complaint on this score.

We are urged to hold any verdict against the defendant contrary to the palpable weight of the evidence, and in consequence to hold it error in the trial court not to have taken the case from the jury by a peremptory instruction, and not to have granted a new trial. This we do not think we should be justified in doing.

Appellant argues that the evidence establishes the facts that the conductor told plaintiff that he must either pay fare or leave the car, and that the plaintiff refused to pay the fare; that thereupon the conductor led or pushed him out of the car without unnecessary force or violence, and impliedly at least, it is argued, without refusing him a reasonable opportunity either to pay his fare or leave. Finally, it is insisted that the great weight of the testimony shows that the car was at a standstill at the time.

As we have said, we do not think it necessary in this discussion to go further than the question of the motion or stoppage of the car; but it is well, perhaps, to say that we do not agree with the appellant on the other portions of the proposition it makes regarding the evidence. It is conflicting to some extent, but there is no disputing that a small man sixty-six years old, with two ladies and an infant in his party and under his care, who in good faith deemed himself and them to have paid a fare which entitled them to passage in the car, who had what he deemed proof of that in his hands, and who actually was entitled to such passage for himself and them under the law, was pulled up from his seat, hustled through the car and put off the same by a man clothed with certain recognized authority, almost a foot taller and but twenty-four years old.

The line between necessary force and violence and unnecessary force and violence may be sometimes hard to draw, but the facts above recited being assumed, we think that if the jury, independently of other considerations, were from the

conflicting evidence warranted in further believing that no sufficient explanation was given or opportunity for explanation vouchsafed, that no reasonable opportunity was offered the plaintiff not only to pay fare, but to leave the car safely and to take his wife, daughter and child with him—in other words, that the actions of the conductor were so prompt, summary and ill-tempered as, in the language of the instruction hereinbefore quoted, to be "of such a reckless character as to show an utter disregard of the rights or safety of other persons," that a verdict for the plaintiff could and ought to be sustained, without at all derogating from the doctrine that it was the duty of the plaintiff to offer no physical resistance to his expulsion. There is in the conflicting evidence, in our opinion, sufficient, if believed, to justify the finding of the jury.

Even if this were not so, it cannot be doubtful that the duty of the conductor was to see that the car had fully stopped before compelling the plaintiff to leave it. Such resistance as was necessary to avoid being thrown from a moving car certainly could not be imputed as a fault to plaintiff. Counsel for appellant say that the evidence proves that the car had stopped, but we do not so read it. There was a direct conflict concerning the point, but at least five disinterested witnesses swore positively that the car was moving when the plaintiff was put off. The criticism of their testimony and the argument concerning their inability properly to observe the situation, made by appellant's counsel, is not convincing, and we think the jury were justified in weighing the credibility of the witnesses and finding that the conductor acted in anger and in reckless disregard of plaintiff's safety.

The appellant argues that even if the car was moving when the plaintiff was put off, yet if his fall was in a struggle in which the plaintiff was assaulting or threatening to assault the conductor and as an incident thereof, there can be no recovery. We have said that the plaintiff had a right to resist, even to struggling, being put off a moving car. This would not give him the right to assault the conductor with his cane, but we are relieved from the necessity of consider-

Traction Company v. Brethauer.

ing whether the contention of the appellant is sound by the fact that there is no testimony to support the hypothesis it suggests.

Roach, the conductor, Garret, the motorman, and Alma Griffies, a witness for defendant, are the only ones who swore to any assault or threatening of an assault on the conductor with a cane, and they all testified that the car was at a standstill and the plaintiff safely off of it and on the ground before he threatened or struck the conductor. Roach and Garret say that after he was on the ground he turned while standing on the street and struck Roach with his cane. Miss Griffies says the plaintiff did not strike the conductor, but ascended the step again and threatened him with his cane. There are witnesses for the plaintiff who say that they noticed a cane in the plaintiff's hands, and that they saw him put his hands out and up with the cane in them, which was natural enough even on the plaintiff's theory of the occurrence; but it cannot be fairly inferred from the testimony of any one of them that he or she saw anything like a threatening motion, and some of them, like Miss Griffies, witness for the defendant, contradict the motorman and conductor about the alleged blow. Miss Griffies says that when put off the plaintiff was protesting, which he surely had a right to do.

The jury were instructed as requested by defendant, that if they believed from the evidence that plaintiff was injured after he had left the car and had safely alighted on the ground, they must find the defendant not guilty, and more specifically that if they believed from the evidence that after the plaintiff was off said car and safely on the street he struck or struck at the conductor with a cane, and that then said conductor, because of being so struck or struck at, pushed said plaintiff so that he fell, etc., the defendant would not be liable for the injuries plaintiff received.

It must be presumed, under these instructions, that the jury did not believe the defendant's witnesses, but believed from the testimony of plaintiff's witnesses that the injuries were received by the ejection from a moving car and a consequent fall.

A variance between the appellee's declaration and the evidence is alleged by the appellant and is urged as a ground for the contention that the case should have been taken from the jury by the trial court, and for the contention that the refused instruction No. 1, offered by the defendant, as follows:

"1. The court instructs the jury that the plaintiff has alleged in his declaration and in each count thereof, that the said conductor willfully, maliciously and wantonly, with great, unnecessary and excessive force and violence, did expel, thrust and eject the plaintiff from said car while the same was moving at a high rate of speed and thereby did throw and cause him to be thrown down to and upon the ground. This is a material allegation of said declaration, and of each count thereof, and the burden of proof is upon the plaintiff, and he must prove said allegation by a preponderance or greater weight of the evidence before he can recover for injuries sustained by him, if any, by being thrown to the ground. If you believe from the evidence, under the instructions of the court, that at the time and place in question, that the car came to a standstill and that the said plaintiff alighted or was put off said car by said conductor, and that he was safely upon the ground and that he was not expelled, or thrown or ejected from said car while said car was moving at a high rate of speed, then the plaintiff cannot recover for the injuries sustained by him, if any, by being thrown to the ground,"

should have been given.

So far as the instruction is concerned, all that was proper in the instruction was covered by others which were given. It is not true that the plaintiff alleged in each count of the declaration that the ejection was while the car was moving at a high rate of speed; nor is it true that the rate of speed was material and must have been proved as charged. So it is explicitly held in Illinois Central Railroad Company v. Davenport, 177 Ill., 110.

It is claimed by the appellant that a variance exists between the declaration and the proof, because the form of ac-

tion is trespass and the proof would only support an action on the case. The argument in support of this claim is highly technical and is unsound. The very cases which counsel for appellant cite in their argument seem to us authorities for the contrary view, and their contentions appear inconsistent and self-destructive. They say that because the defendant company authorized and required its servant to do an unlawful act, the act became rightful and lawful so far as the servant was concerned, and therefore the defendant company would not be liable in trespass, but only in case, because the servant's act was rightful. But even before the section of the Practice Act which abolished the distinction between actions of trespass and trespass on the case, and declared that in all cases where trespass or trespass on the case had been theretofore the appropriate form of action, either of the forms might be used, as the party bringing the action might elect, the Supreme Court, speaking through Judge Caton in St. Louis, Alton & Chicago Railroad Company v. Dalby, 19 Ill., 353, said that where a person was removed from a car by an authorized agent of the company, when he had not refused to pay the fare he was legally bound to pay, the company was liable in an action of trespass. In that case the conductor was following the general orders of the company, which however were illegal, as in the case at bar, and the judgment in trespass was affirmed.

The doctrine contended for by the appellant is an entirely different one from that which was recognized by the instructions—that the passenger should not physically resist the unlawful expulsion, and cannot recover for physical injuries received in consequence thereof if he does—with which appellant appears to confound it. The point appears even less well taken, if possible, in view of the section of the Practice Act which we have quoted. Moreover, we agree with the position of appellee that it was not properly brought to the attention of the trial court even had it been valid, and cannot, therefore, be considered here.

Finally, the appellant urges that the damages are excessive. We think they are very large, and this matter has given us

some hesitation in affirming this judgment as it stands. We do not think them so large, however, in view of some of the evidence, as clearly to show passion and prejudice on the part of the jury; and it is impossible to determine from the verdict given on what basis the jury gave them. We feel, in consideration of the whole case, that in requiring a *remittitur* we should invade the province of the jury, although we should have been better satisfied with a smaller verdict.

We cannot and do not, in view of the authorities in this State—for example, Chicago, Burlington & Quincy R. R. Co. v. Bryan, 90 Ill., 126, and Illinois Central R. R. Co. v. Davenport, 177 Ill., 110—hold that exemplary or punitive damages could not be given in this case against the defendant, but if we could know that the jury fixed the amount of the damages on such a basis, we might be inclined to compel a *remittitur* as a condition of affirming the judgment, for although punitive damages might be allowed, their amount would be a proper subject for our consideration. But no instructions were asked by appellee or given by the court suggesting such damages, and it may be that the jury, with the witnesses and the plaintiff before them, considered that the damages given were merely compensatory for the injuries which they believed from the somewhat conflicting evidence were received.

We do not think that the evidence of loss in the plaintiff's business was conclusive or very important under the circumstances shown but the evidence of the plaintiff himself and of his daughter and of the physician who attended him, tended to show permanent injuries both to the plaintiff's mind and body. His memory, his nerves of motion, his voice, his hearing and his eyesight were permanently affected, according to his own and his daughter's testimony. The physician diagnosed among his injuries concussion of the brain and a fracture of the skull. The indignity offered to him was great, and the physical pain and suffering, according to his testimony and that of his daughter, very great.

Although testimony offered by the defendant's witnesses tends to contradict some of the statements made by the daugh-

ter and other witnesses for the plaintiff regarding his condition immediately after the occurrence, the jury may have preferred to believe the latter.

The judgment is affirmed.

*Affirmed.*