### Chicago Consolidated Traction Company v. Tillie Mahoney.

#### Gen. No. 13,051.

1. DECLARATION—*when objection for duplicity comes too late.* An objection to a declaration upon the ground that it is double comes too late after joinder in issue.

2. INSTRUCTION—*when error in, will not reverse.* An error in an instruction will not reverse where it does not appear that the jury could have been misled by such error.

3. INSTRUCTIONS—*how to be considered.* Instructions are to be regarded as a series and construed as a whole.

4. VERDICT—*when not excessive.* A verdict for $1,250 rendered in an action for a malicious and unprovoked assault is not excessive where it appears that the plaintiff, a woman, was at the time of the injury just recovering from the effects of a surgical operation, and where, as a result of such injury, her health was for some period impaired.

Action for damages for assault and battery. Appeal from the

VOL. 131.]    Chicago Consolidated Traction Co. v. Mahoney.

Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the March term, 1906. Affirmed. Opinion filed March 5, 1907.

JOHN A. ROSE and ALBERT M. CROSS, for appellant; W. W. GURLEY, of counsel.

O'BRIEN & McKINLEY, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Plaintiff brought this action in the Circuit Court against defendant to recover damages for a malicious and unprovoked assault by the servant of defendant, a conductor of a Southport avenue car, at the intersection of Southport and Lincoln avenues, Chicago, at which point the conductor forcibly ejected the plaintiff from the car while it was in motion, accelerating her movement toward the street by pushing his knee in her back. Plaintiff contends that she was bruised by the fall, pinched on the arm by the conductor, generally shaken up and disturbed both physically and mentally, and much humiliated before a lot of people in the car and upon the street, who witnessed the actions of the conductor and heard his insulting language.

A trial resulted in a verdict of $1,250, upon which a judgment was entered, and this appeal prayed and prosecuted in an effort to reverse the judgment.

Defendant, at the close of plaintiff's case, and again at the close of all the evidence, proffered a motion to peremptorily instruct the jury to find a verdict in its favor, both of which motions the court denied. To these rulings of the court exceptions were preserved and error here assigned. It is too clear for argument that the evidence was such as to compel a submission of the case to the jury. Plaintiff made a strong *prima facie* case by her direct proof, and the contradictions of it by the witnesses for the defense made a typical case for the jury to pass upon the weight and credibility of the testimony and the witnesses, and

to say by their verdict which of the two conflicting accounts of the occurrence they would credit.

Three grounds are pressed upon us in argument as necessitating a reversal, viz: The verdict is not supported by the evidence, erroneous instructions to the jury upon the law, and that the damages are excessive.

Plaintiff was a passenger on defendant's Ashland avenue car on March 3, 1902, at about three o'clock in the afternoon. She paid her fare and procured a transfer, which entitled her to ride upon a north-bound Southport avenue car. She got onto such a car at the intersection of Ashland avenue, Wellington and Lincoln streets. When the conductor asked her for her fare or a transfer, she discovered that in getting upon the car she had dropped her transfer on the step of the car. This the conductor observed, according to the testimony of a witness, who directed his attention to it. The conductor, this witness says, smiled, but did nothing toward recovering the accidentally dropped transfer of plaintiff. This testimony, if true, was notice to the conductor that plaintiff had paid her fare, and his conduct and manner should have been restrained and guided by the fact thus brought to his knowledge. The plaintiff had discharged her obligation to defendant when she paid her fare, and if in response to the hurry up hustle order of the conductor, plaintiff inadvertently dropped the transfer upon the step of the car, within the sight and knowledge of the conductor, it was just as easy, if not the duty of the conductor, to pick up the transfer and keep it in discharge of plaintiff's liability, as to attempt to extort another fare from plaintiff in its place. If the jury believed the conductor knew plaintiff's transfer was on the step of his car and within his reach, they might regard such fact as strong presumptive evidence of malice or wantonness in what the conductor afterwards did and said to plaintiff.

Plaintiff says—and her statements are fairly cor-

roborated—that the conductor, after she was seated, immediately demanded a fare from her, whereupon she asked the conductor if he did not have her transfer, she having a moment before, she says, overheard a lady passenger behind her tell the conductor that plaintiff had dropped her transfer on the car step. The conductor replied gruffly that it was not his business to pick up transfers. Plaintiff thereupon told him that she had a transfer when she got on the car, whereat the conductor became angry and called plaintiff, within the hearing of her fellow-passengers, a "damn liar." Without warning or giving plaintiff time to open her pocketbook and extract a nickel with which to satisfy the apparently unjust demand of the conductor in the light of his knowledge of her transfer being on the car step, he grabbed her by her arm and pulled her from the seat on which she sat and along the aisle of the car, talking loudly and angrily and threatening to throw her off the car. She asked him not to throw her off, but to stop the car and she would get off. She then threw herself down on a seat and asked a lady passenger for her name; she got her address, but before she could get her name the conductor again pulled her from the seat, called her a liar, pushed her to the platform in the rear through the doorway, and while the car was still in motion pushed her off the car into the street by forcing his knee in her back. The transfer in dispute was noticed to fall from the step of the car after it had run about a block. Plaintiff secured it and it was in evidence on the trial. These facts were not only testified to by plaintiff, but she was corroborated by two eye witnesses of the affray, who, being indignant at the treatment by the conductor of plaintiff, voluntarily gave their names and addresses to plaintiff.

The witnesses of defendant admit the expulsion of plaintiff from the car, but differ as to the manner in which the expulsion was accomplished and as to the

language attributed to the conductor while so doing. Plaintiff was out on the day of this assault for the first time after having undergone an operation for appendicitis, and as a result of the assault and expulsion from the car in her then weakened condition, besides the swelling and contusions in her elbow and shoulder, she suffered from shock to her nerves which developed into hysterics, from which she continued to suffer and for which she was under medical treatment for some time thereafter.

In this condition of the record, as before said, the duty of reconciling the conflict in the proof was for the jury. If they believed, as they had the right, plaintiff's version and that of her witnesses of the occurrence, in preference to the narration thereof by defendant's witnesses, the verdict is justified. The claim of the conductor that he permitted plaintiff to take the names of persons on the car, witnesses of the assault, to be used as witnesses in the trial of a suit intended to be instituted by plaintiff against defendant, is untenable, if the jury believed the contrary statement that plaintiff forcibly sat down beside a passenger with that purpose in view, and was ruthlessly pulled away in anger and thrust off the car by the conductor, as detailed by plaintiff and her witnesses. The jury were likewise justified in believing that the conductor knew of and saw the transfer of plaintiff on the step of the car before he demanded her fare, and plaintiff's version of what took place at the time of making such demand, and the occurrences which immediately followed, and to disbelieve the conductor's denial of seeing the transfer and his whole evidence as to his actions and conduct on the occasion in question. They have by their verdict indicated that they disbelieved the witnesses of defendant and gave credence to those of plaintiff. All the evidence considered, we are not inclined to disagree with them in their solution of the conflict.

Plaintiff had the right to hunt for evidence to aid in

righting the wrongs suffered by her at the hands of defendant's servant in a court of law. Is it to be doubted that such was not only her right, but her duty, both to herself and for an example to protect others from like treatment? Defendant would have us infer that plaintiff's conduct in this regard was somewhat reprehensible; that her desire for evidence to prove the fact of the harsh treatment and humiliation inflicted upon her by the conductor is altogether unbecoming and should be discountenanced. Was she compelled to quietly submit to the insults and maltreatment of the conductor at the risk of being abused and her motives challenged because forsooth, smarting under the humiliation arising from the insulting language and physical violence of the conductor, she sought to invoke the retaliatory method sanctioned by law, and to secure the names of witnesses by whom these overt acts could be established and her wrongs manifested in a legal tribunal? No criticism of an unfavorable nature should be tolerated challenging the actions of plaintiff in so doing. It was her right to resent the insults and violence received by her at the hands of defendant's servant and to seek reparation in a suit for damages. This attack upon her motives smacks of adding insult to injury. When the plaintiff indicated her intention to make a case against defendant its conductor should have profited by such warning and have desisted in his attack. That would have been the prudent and better course for him to have pursued.

We do not think the declaration is subject to the objection made as being partly in trespass and partly trespass on the case, and if it were, the objection is without force coming, as it does, after plea joining issue upon its every averment, and for the first time on review. It is cured by verdict.

Instruction 2 is inartificially worded as applied to this class of action. It should have referred to the conduct of plaintiff as being peaceful and lawful, if it

was desired to inform the jury what the law required in regard to her conduct under the circumstances complained of; but we cannot see how the jury could have been misled by being told that plaintiff should have been in the exercise of reasonable and ordinary care at the time of her expulsion from the car. It was harmless error, in view of the proof and the remaining questions of law correctly stated in the other instructions to the jury. We cannot say that the jury were misled, or that the rights of defendant have been affected thereby to its detriment.

Instructions 4 and 5 are not subject to the objection or criticism indulged by appellant. Neither of them partakes of the frailty pointed out in Curl v. C., R. I. & P. Ry., 63 Ia. 417. Counsel's assumption is not sustained by the context of these instructions. In the Curl case, *supra,* the instruction was held bad because it assumed that the use of unnecessary force was sufficient ground for the allowance of exemplary damages and in ignoring the essential element of malice upon which alone exemplary damages could be predicated. Both instructions 4 and 5 in effect plainly informed the jury that malice and wantonness must have inspired and accompanied the assault to warrant an award of exemplary or punitive damages. These instructions contained all the necessary ingredients and qualifying phrases to meet the limitations of the law in relation to an award of exemplary damages to the full measure of the authorities to which appellant's counsel have cited us. Neither are these instructions violations of any principle appearing in the Illinois cases cited, or contrary to the logic, reasoning or law promulgated by the Federal Supreme Court in L. S. & M. S. Ry. v. Prentice, 147 U. S. 101.

The modification by the trial court of instructions 6 and 7 in no way detracted from the correct legal principles enunciated in them, which defendant does not seriously challenge. The modification of these instructions simply met the settled law of this forum,

that the instructions given by the court shall be considered by the jury as a whole and construed together in arriving at a verdict. No single instruction should be considered by the jury alone without reference to the other instructions in the series given. In effect, this is what the modifications complained of emphasized to the jury.

Defendant insists that the damages awarded are excessive. The contention is without force in the light of the proof. A similar case of the forcible expulsion of a passenger from a car by a conductor, in which a $10,000 award of damages was sustained is Union Traction Co. v. Brethauer, 125 Ill. App. 204, where a full discussion of the law applicable here, including the right to recover punitive damages will be found. The judgment of affirmance by this court was sustained on further review and is reported in 223 Ill. 521.

Plaintiff was, at the time of the injury, just recovering from the effect of a surgical operation. She was not strong. She was, whatever her condition of health, however robust she might have been, entitled to considerate and gentle treatment at the hands of the servant of defendant while a passenger on its cars. In place of such treatment she was insulted and assaulted, without any justifiable reason, forcibly expelled from the car by the conductor while it was in motion; she was humiliated and physically injured. From this harsh and uncalled for treatment her health was affected for some time. It was a case justifying an award of punitive damages. The injury was wantonly and maliciously inflicted. For these injuries, inflicted by defendant's servant, it is liable.

City of Chicago v. Martin, 49 Ill. 241, is appropriately in point in the case at bar. As Chief Justice Breese, speaking for the court, said, "There are two objects in permitting punitive damages. One is to restrain the defendant and others from a repetition of the offense." He then quotes the following remarks of Chief Justice Gibbs in Merest v. Harvey, 1 E. C. Law,

230: "I wish to know, in a case where a man disregards every principle which actuates the conduct of a gentleman, what is to restrain him except large damages."

The damages assessed here are within the reasonable bounds of defendant's liability and are quite supported both by the proof and the law. There is no reversible error in this record. Justice between the parties has been fairly meted out, and the judgment of the Circuit Court is affirmed.

*Affirmed.*