Henry A. Fowler, Administrator, Appellee, v. Chi-
cago & Western Indiana Railroad Company and Chi-
cago & Erie Railroad Company, Appellants.

Gen. No. 17,914.

1. RAILROADS, § 517*—*duty to trespassers on tracks.* Rail-
road owes no duty to a trespasser on its tracks except to refrain
from wantonly or wilfully injuring him and to use reasonable care
to avoid injury to him after he is discovered to be in peril.

2. RAILROADS, § 564*—*when contributory negligence, no de-
fense.* Contributory negligence such as that of a trespasser upon
a railroad track cannot be relied on where such person is wan-
tonly and wilfully injured by the railroad company.

3. RAILROADS, § 531*—*right of engineer to presume trespasser
will leave track in time.* The rule that an engineer upon discov-
ering a person on the track may presume that such person will
leave the track in time to escape injury does not apply where such
person is on a bridge and because of high girders on each side of
the track can not easily step out of danger.

4. RAILROADS, § 578*—*when declarations of engineer admissible.*
Declaration of engineer soon after the accident that "he saw de-
ceased just enter the trestle * * * and thought he would get
out of the way," *held* admissible as a part of the *res gestae* and
also competent evidence as tending to show his knowledge of
the perilous position of deceased.

5. EVIDENCE, § 76*—*test to determine what constitutes part of
res gestae.* For evidence to be admissible as part of the *res gestae,*
the act, declaration or exclamation must be so intimately inter-
woven or connected with the principal fact it characterizes as to
be regarded a part of the transaction itself, and also clearly to
negative any premeditation or purpose to manufacture testimony.

6. EVIDENCE, § 76*—*rules in determining res gestae.* Whether
an act or declaration will be considered as part of the *res gestae*
depends upon the circumstances of each case.

7. EVIDENCE, § 79*—*when declarations part of res gestae.* Dec-
larations to be a part of the *res gestae* are not required to be pre-
cisely concurrent in point of time with the principal fact.

8. APPEAL AND ERROR, § 1775*—*when declaration sufficient to
sustain verdict.* An entire verdict on several counts will not be set
aside where there are one or more counts sufficient to sustain it.

9. APPEAL AND ERROR, § 1690*—*when error in overruling mo-
tion to direct verdict is waived.* Objection to action of court in

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

overruling motion to direct verdict is waived by proceeding to introduce testimony.

Appeal· from the Superior Court of Cook county; the Hon. CHARLES A. McDONALD, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed October 9, 1913.

W. O. JOHNSON and BULL & JOHNSON, for appellants.

ROYAL W. IRWIN and FRANK W. KORALESKI, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an action brought by Henry A. Fowler, as administrator of the estate of Thomas Rooney, deceased, to recover damages for the killing of said Rooney by a passenger train operated by the Chicago & Erie Railroad Company upon the elevated tracks of the Chicago & Western Indiana Railroad Company in the city of Chicago. The deceased was seventeen years of age and was a trespasser on the tracks at the time. The two railroad companies were made defendants, and the jury returned a verdict against both, assessing plaintiff's damages at four thousand, five hundred dollars, and the court, after overruling defendants' motions for a new trial and in arrest of judgment, entered judgment upon the verdict.

The second count of the declaration averred, in substance, that while plaintiff's intestate was walking in a northerly direction along and upon one of said tracks, and over a bridge or viaduct and between large steel beams or girders, about four and one-half feet high, on either side of said tracks, and while he was in the exercise of ordinary care for his own safety, the defendants caused to be operated in a southerly direction upon said track an engine or train; that the defendants knew of the presence of plaintiff's intestate

upon said track and upon said bridge or viaduct, and between said girders, and that he could not leave said track and viaduct and thereby avoid the approach of said engine or train; that it was the duty of the defendants to stop said engine or train until he could leave said viaduct and remove himself from said track into a place of safety; that the defendants, not regarding their duty, then and there "willfully and wantonly" caused and permitted said engine and train to proceed towards plaintiff's intestate over said track at a high and dangerous rate of speed and to run into and strike plaintiff's intestate, then and there upon said bridge or viaduct, thereby causing his death.

The elevated tracks, five in number, ran in a north and south direction along Wallace street in the city of Chicago. One of the streets which they crossed, at right angles and by means of a viaduct or bridge, was 60th street. This viaduct was about seventy feet long. Solid steel uprights, about five feet high, ran along the east and west sides of the viaduct, and also between each of said tracks. Between tracks numbered two and three, counting from the east, there was an open space in the viaduct, ten or fifteen feet wide and running clear across 60th street. Immediately north of the viaduct and opposite said open space was a stairway which admitted passengers to the platform of the 59th street station. About fifteen feet south of the viaduct and between tracks two and three there was a switchman's shanty. About twelve hundred feet north of the north line of said viaduct was a crossing of the Pennsylvania Railroad Company. Just prior to the accident a gang of men were engaged in repair work on track number three about three hundred feet north of said viaduct. The accident occurred about 11 o'clock on the morning of May 4, 1909. The sun was shining and the rails were dry. The train consisted of an engine and five cars, equipped with modern appliances, and approached said viaduct from the north on track

number three, and before the engineer made efforts to stop the train it was running at a speed of about twenty-five miles per hour. The details of the accident, as shown by the testimony of plaintiff's witnesses, are as follows:

Vincent R. Boyd testified that for about five minutes prior to the accident he had been sitting on the concrete wall of the elevation, east of the tracks and about four hundred feet north of said viaduct; that this concrete wall was about four feet higher than the level of the tracks; that he first noticed the deceased standing near said switchman's shanty, south of said viaduct and at the side of track three, talking to somebody; that deceased then walked towards the witness on track three, "in between the viaduct, with his head down looking like he was counting the ties," and "apparently not looking at the approaching train;" that the witness first saw the train when it was north of him, about at the Pennsylvania crossing, and it approached "very quickly;" that "the train didn't seem to slow up until it hit him and knocked him over;" that "he was pretty near off the north end of the viaduct when the train hit him;" that when the train stopped the rear of the train was "quite a ways past" the body of the deceased, but whether the rear of the train was south of and off of the viaduct he did not remember.

Michael Bowen, an employe of the defendant Western Indiana Railroad Company, testified that on the morning of the accident he and several other men were working on track three, about two hundred and fifty feet north of said viaduct; that the train whistled at said Pennsylvania crossing "for the men to get out of the way;" that the train did not whistle as it passed him and he would have heard it if it had; that he heard no bell rung; that after the train had passed him "it commenced to slacken up a bit;" that he looked towards the south and saw a man "coming down the

bridge with his head down;" that when he first saw the man on the bridge he was about twenty-five or thirty feet north of the south end; that after the man was struck he went to the bridge and the man's body "was almost in the middle of the bridge, lying along-side of the track."

Two witnesses, in answer to hypothetical questions, testified that a train, equipped like the train in question and with the rails dry and in good condition, while running twenty-five miles per hour, could be stopped in from two hundred and fifty to three hundred feet.

John Murray, a boy friend of Thomas Rooney, the deceased, testified that on the morning of the accident he was walking east on the north side of 60th street, underneath said viaduct, when Rooney, who was on the elevation just south of the viaduct and east of track three, called down to him through said opening in the viaduct between tracks two and three, and there-upon they engaged in conversation; that after talking a couple of minutes the witness started to go to his home, which was about one hundred and seventy-five feet away, intending to immediately return and go down town with Rooney; that when he was about half way home he heard a train begin to stop, that his attention was attracted by the grinding of the brake shoes on the wheels, and he turned around, went back and ascended the stairway and went onto the bridge or viaduct; that he saw Rooney's body lying a little north of the center of the bridge and on the east side of track three; that the train had stopped "just south of the bridge;" that after reaching Rooney's body and viewing it, he turned around, went to his home, and came "right back and on to the trestle again;" that "it took me about two minutes to come back;" that Rooney's body was still lying there and there was a crowd around; that he "just passed by" the body and went to the front of the train; that there were

three or four men gathered around the engine talking to the engineer, who was in his cab; that "some one asked who it was that got hurt, and I answered the question;" that a general conversation ensued and the witness heard the engineer say that "he seen this young man just enter the trestle when he was about the Pennsylvania crossing and he thought he would get out of the way;" that the witness then went back to where Rooney's body was lying, and remained there about ten minutes, when the police came and removed the body.

At the conclusion of plaintiff's evidence, the attorneys for the defendants moved to strike out that portion of the testimony of the witness Murray as to said statement or declaration of the engineer of the train, on the ground that it was incompetent, and not part of the *res gestae,* which motion was overruled, and the several motions of the defendants, then made, that the court instruct the jury to find them not guilty were also overruled, and exceptions taken. Neither of the defendants stood by the motions for a directed verdict in their favor, but proceeded to introduce testimony. By this course they waived all objections to the action of the court in overruling their said motions for a directed verdict. *Goldie v. Werner,* 151 Ill. 551, 554; *Joliet, A & N. R. Co. v. Velie,* 140 Ill. 59, 64; *Dunham Towing & Wrecking Co. v. Dandelin,* 143 Ill. 409; *Langan v. Enos Fire-Escape Co.,* 233 Ill. 308. At the close of the plaintiff's case, practically the only evidence in the record tending to show that the engineer had actually discovered Rooney in the perilous position in which he was in time to have avoided injuring him by the exercise of reasonable care, was the testimony of the witness, Murray, as to the admission or declaration of the engineer above mentioned. That admission or declaration, according to Murray's testimony, tended to show that the engineer had *knowledge* that Rooney was entering the bridge when the train was

about twelve hundred feet away from the bridge.   The
fact of this knowledge in the engineer was a material
and essential element in plaintiff's case where the
charge was wilful and wanton negligence.   "A rail-
road company owes no duty to a person walking along
its tracks without its invitation, either expressed or
implied, except to refrain from wantonly or willfully
injuring him, and to use reasonable care to avoid in-
jury to him *after he is discovered to be in peril.*"
*Illinois Cent. R. Co. v. Eicher,* 202 Ill. 556, 560; *Bart-
lett v. Wabash R. Co.,* 220 Ill. 163; *Neice v. Chicago
& A. R. Co.,* 254 Ill. 595, 603.   And in our opinion the
rule, that an engineer is not bound to stop his train
the moment he sees a person on the track, but has the
right to presume that such person will leave the track
in time to escape injury and without being negligent
may continue to run the train until he discovers that
such person is heedless of the danger, does not apply
where such person, as in the present case, was on a
bridge and, because of the high girders on each side
of the track, could not easily step out of danger.
*Peirce v. Walters,* 164 Ill. 560, 564.   And "contribu-
tory negligence, such as that of a trespasser upon a
railroad track, cannot be relied on 'in any case where
the action of the defendant is wanton, wilful or reck-
less in the premises, and injury ensues as the result.' "
*Lake Shore & M. S. Ry. Co. v. Bodemer,* 139 Ill. 596,
607; *Elgin, J. & E. Ry. Co. v. Duffy,* 191 Ill. 489, 492.

The defendants introduced but one witness, L. F.
Truman, the engineer of the train.   He testified that
he had been employed as a locomotive engineer by the
Chicago & Erie Railroad Company for twenty-eight
years; that as he approached the Pennsylvania cross-
ing he noticed a gang of laborers working on the track
about three hundred feet north of the viaduct; that
right after he crossed the Pennsylvania crossing he
"blew his whistle for the section men;" that he was
then sitting on the right side of the cab looking out of

the front window; that the train was then going twenty or twenty-five miles per hour; that he first saw Rooney when he (the engineer) was "right about where the section men were working;" that "I think he (Rooney) must have been on the viaduct when I first seen him;" that at that time "it looked as though he was just entering" the viaduct; that he was not then on the track, but "walking just on the outside of the east rail;" that "he had his overcoat on his arm;" that the train was then going twenty-five miles per hour; that neither when he first saw Rooney nor afterwards did he blow the whistle or ring any bell; that when he blew the whistle at the Pennsylvania crossing for the section men "it was so close it would do" for Rooney; that he did not put on the air as soon as he saw Rooney; that he did not put on the air until he (the engineer) was *"within about seventy-five feet of the bridge;"* that he did not put on the sand because "I didn't have time;" that when he put on the air "there was no chance" for Rooney to get off the bridge; that the train was about three hundred and seventy-five feet long and he stopped the train in about its length, "the hind end standing right close to where the man lay." The witness denied that after the accident he had made any statement to the effect that he first saw Rooney in the viaduct when the train was about at the Pennsylvania crossing.

We think that the effect of the above testimony of Truman, the engineer, was to strengthen plaintiff's case, in that it showed that he saw Rooney in a perilous position on the track and bridge when the former was about three hundred feet away from the viaduct, and in that said testimony, in connection with the other evidence, strongly tended to show that the engineer did not, after seeing Rooney, use reasonable care to avoid injuring him and was guilty of wanton and reckless conduct. The plaintiff was entitled to the benefit of this testimony. *Goldie v. Werner, supra;*

*Joliet, A. & N. R. Co. v. Velie, supra.* And we think that the trial court did not err in overruling the several motions of the defendants for a directed verdict made at the close of all the evidence. It was for the jury to say, under all the facts and circumstances in evidence, whether or not the engineer was guilty of negligence, which was wanton and reckless in character, and we are not disposed to disturb the verdict on the ground of the insufficiency of the evidence to support it. *Lake Shore & M. S. Ry. Co. v. Bodemer, supra; Martin v. Chicago & N. W. Ry. Co.,* 194 Ill. 138; *Elgin City Banking Co. v. Chicago M. & St. P. Ry. Co.,* 160 Ill. App. 364.

But the principal ground here urged by counsel for the defendants for a reversal of the judgment is, that the trial court erred in admitting, over objection, that portion of the testimony of the witness, Murray, as to the statement or admission of the engineer made shortly after the accident and before Rooney's body had been removed. Counsel argue that the same is not a part of the *res gestae,* in that it did not constitute a verbal act and was not a spontaneous exclamation, and that such a statement or declaration is incompetent as against the defendants because the engineer's employment does not carry with it authority to make such a declaration at a time *subsequent* to the time that the train struck Rooney.

After careful consideration we are of the opinion that under the facts of this case no error was committed by the court in admitting said testimony. The decided cases, as to whether or not certain declarations are properly a part of the *res gestae* and admissible, are not harmonious. "The true test, in all cases, by which the admissibility of such testimony is determined, is, the act, declaration or exclamation must be so intimately interwoven or connected with the principal fact or event which it characterizes, as to be regarded a part of the transaction itself, and also

to clearly negative any premeditation or purpose to manufacture testimony." *Lander v. People,* 104 Ill. 248, 256. "Whether or not such act or declarations will be so considered must depend upon the circumstances of each case." *Chicago & E. I. R. Co. v. Chancellor,* 165 Ill. 438, 444. While a narrative of past events cannot be introduced as a part of the *res gestae,* "continuousness is not always to be measured by time." *Swanson v. Chicago City Ry. Co.,* 242 Ill. 388, 395. "It is not concurrence in time alone, nor separation in time alone, which has been made the test, as an analysis of the cases will show." *Chicago Union Traction Co. v. Brethauer,* 125 Ill. App. 204, 211. "Declarations, to be a part of the *res gestae,* are not required to be precisely concurrent in point of time with the principal fact if they spring out of the principal transaction, if they tend to explain it, are voluntary and spontaneous, and are made at a time so near it, as to preclude the idea of deliberate design; then they are to be regarded as contemporaneous, and are admissible." *Davids v. People,* 192 Ill. 176, 189. We think the ruling of the trial court is supported by the following decisions of the courts of this state, viz: *East St. Louis Connecting Ry. Co. v. Allen,* 54 Ill. App. 27; 30; *Quincy Horse Ry. Co. v. Gnuse,* 137 Ill. 264, 269; *Springfield Consol. Ry. Co. v. Welsch,* 155 Ill. 511, 512; *Muren Coal & Ice Co. v. Howell,* 217 Ill. 190, 199; and by the following cases, similar to the present case, in other States, viz: *Anderson v. Great Northern Ry. Co.,* 15 Idaho 513; *Alsever v. Minneapolis & St. L. R. Co.,* 115 Iowa 338; *Hooker v. Chicago, M. & St. P. Ry. Co.,* 76 Wis. 542, 547; *Hermes v. Chicago & N. W. Ry. Co.,* 80 Wis. 590. Furthermore, we think the testimony as to the declaration of the engineer was competent evidence as tending to show knowledge on his part of the presence of Rooney in a perilous position, while acting within the scope of his employment. *Swanson v. Chicago City Ry. Co., supra; Ohio*

*& M. Ry. Co. v. Porter,* 92 Ill. 437, 439; *Hyvonen v. Hector Iron Co.,* 103 Minn. 331, 332; *Union Pac. R. Co. v. Edmondson,* 77 Neb. 682, 685.

Counsel also contend that the declaration is insufficient to support the verdict in that it fails to state sufficient facts showing the duty of the defendants in the premises towards plaintiff's intestate. The declaration consisted of three counts. We think the second count is sufficient at least after verdict. *Smith v. Chicago & E. I. R. Co.,* 99 Ill. App. 296, 300; *Chicago & A. R. Co. v. Clausen,* 173 Ill. 100; *Danley v. Hibbard,* 222 Ill. 88. "Where there is an entire verdict on several counts, the verdict will not be set aside because the declaration contains a defective count if there are one or more counts sufficient to sustain a verdict." *Bennett v. Chicago City Ry. Co.,* 243 Ill. 420, 434.

Finding no reversible error in the record, the judgment of the Superior Court is affirmed.

*Affirmed.*