Sam Kars and Eva Kars, Appellants, v. John S. Knauf, doing business as Knauf & Weber Roofing Company, Raymond L. Lutgert Construction Company, Inc., and Sidney H. Morris & Associates, Inc., Appellees.

Gen. No. 47,052.

First District, First Division.

April 1, 1957.

Rehearing denied April 24, 1957.

Released for publication April 24, 1957.

Morgan, Halligan, Lanoff and Curtis, Friedman & Marks, all of Chicago, for appellants; Joseph T. McGuire, and Louis S. Friedman, of Chicago, of counsel.

Halfpenny & Hahn, of Chicago, for John S. Knauf, doing business as Knauf & Weber Roofing Company, Johnson & Bateman, of Chicago, for Raymond L. Lutgert Construction Company, Inc., and Alvin D. Simon, of Chicago, for Sidney H. Morris & Associates, Inc., appellees; Donald E. Bateman, James F. Flanagan, and Alvin D. Simon, all of Chicago, of counsel.

JUDGE FRIEND delivered the opinion of the court.

Sam and Eva Kars, husband and wife, filed an amended complaint against John S. Knauf, doing business as Knauf and Weber Roofing Company (hereinafter referred to as Knauf), a general roofing contractor, Raymond L. Lutgert Construction Company, Inc. (hereinafter referred to as Lutgert), general building contractors, and Sidney H. Morris and

Associates, Inc. (hereinafter referred to as Morris), architects, seeking damages for the faulty construction of the building which was erected for plaintiffs at 4345–49 North Central Avenue in Chicago. All the defendants answered, and Morris in addition filed a counterclaim, seeking a $1,000 balance allegedly due for architectural services rendered.

Under the terms of a written agreement Morris undertook to prepare preliminary sketches, working drawings and specifications, and to assume the supervision of work in the erection of a one-floor retail store building, "with family dwelling above," on vacant property owned by plaintiffs. Lutgert, as general contractor, undertook the construction of the building, also under written agreement, and Knauf, under a written subcontract with Lutgert, agreed to construct a roof on the building in accordance with the architect's plans. The work began about March 1, 1949 and was substantially completed in August of that year. Each store occupied approximately one-half of the first floor of the building, and above the north store was a family dwelling. Shortly after the completion of the building plaintiffs moved into the living quarters, and after installing the necessary equipment and acquiring a stock of merchandise, they opened and operated a retail variety and general merchandise store. The south store was leased to the National Tea Company which occupied it and began operating a supermarket.

Plaintiffs introduced considerable evidence of roof leaks in the rear of the building as early as July 1949, prior to taking possession of the building, and of further leaks during the Christmas rush in December 1949, and again on several occasions in February 1950. They notified Morris, who referred the complaint to Lutgert; Knauf, in turn, was notified of the defective condition of the roof. None of the defendants reme-

221

■■■■■■■

died the defects, and accordingly plaintiffs were obliged to order repairs through independent contractors, incurring expenses for material, labor and installation, for the recovery of which this suit was instituted.

The case was tried by the court without a jury. At the close of plaintiffs' case all three defendants moved for a directed finding. The motion was sustained as to Knauf and denied as to Morris and Lutgert. Thereupon Morris called two witnesses, and Lutgert, through his counsel, actively participated in the defense. Prior to the conclusion of defendants' case, Morris and Lutgert renewed their motions for a directed finding. The court granted the motions and entered judgment accordingly. Morris had leave to amend his counterclaim to allege an account stated of $1,000, with interest, or an aggregate of $1,312.50, for which judgment was entered.

Under the settled rule in this state, when defendants put in evidence after the denial of their motions at the close of plaintiffs' case for a directed verdict, the motions are waived. In the leading case of Goldberg v. Capitol Freight Lines, Ltd., 314 Ill. App. 347, affirmed 382 Ill. 283, plaintiff brought an action against defendants for personal injury claimed to have resulted from their negligence, and was awarded a verdict in her favor. In the course of trial one of the defendants, a bus company, had made a motion for a directed verdict at the close of plaintiff's case, which was denied. Thereafter the company introduced evidence and subsequently attempted to renew its motion for a directed verdict. On appeal, counsel for the bus company asserted that the court erred in refusing to direct a verdict in its favor at the close of plaintiff's evidence and again when it renewed its motion at the close of all the evidence. The Appellate Court, in passing on the latter contention, said: "The

motion made by the Bus Company at the close of plaintiff's evidence could not be renewed after the Bus Company put in evidence, and the motion could not be reserved, as the court attempted to do. When defendants put in evidence after making their motion at the close of plaintiff's case, for a directed verdict, that motion was out of the case for all time. It could not be reserved and it could not be renewed. Popadowski v. Bergaman, 304 Ill. App. 422; Kahler v. Marchi, 307 Ill. App. 23; Hirshman v. National Mineral Co., 311 Ill. App. 169.

"In the *Popadowski* case we said: 'Where a defendant makes a motion at the close of plaintiff's case for a directed verdict, if he desires to save his point, he must introduce no evidence. But if he puts in his evidence and desires a directed verdict, he must make a *second* motion for a directed verdict. The court in passing on the second motion must do so in view of all the evidence. (Cook v. Aevermann, 244 Ill. App. 644 (Abst.); Joliet, A. & N. Ry. Co. v. Velie, 140 Ill. 59; Fowler v. Chicago & W. I. R. Co., 182 Ill. App. 123.) Some opinions inaccurately state the law to be that where a defendant moves for a directed verdict at the close of plaintiff's case and the motion is overruled and defendant then introduces his evidence, he must "renew" his motion at the close of all the evidence. In such case the motion made at the close of plaintiff's case cannot be renewed. It is out of the case for all time and, as stated, if defendant desires to have the court of review pass on the question whether plaintiff had made out a *prima facie* case, at the close of all of the evidence, he must make a second motion based on all the evidence.' "

■ If defendants wanted the court to review and pass on the question whether plaintiffs had made out a *prima facie* case, at the close of all the evidence, it was then incumbent upon them to make a second

223

motion based on all the evidence. This they failed to do. The procedure followed was, in effect, an attempted short-cut midway in the trial.

Morris argues that his motion for a directed verdict, offered subsequent to the introduction of testimony on his behalf, was treated by the court as a submission of the case on its merits, but the wording of the order entered by the court specifically negatives this contention; it recites that the motion "at the close of Plaintiffs' evidence" and "renewed during the course of Defendant's presentation of Defendant's evidence and prior to conclusion of the Defendant's evidence, . . . allowed." There is no merit to the contention of Morris and Lutgert that the "error here, if any, was procedural"; it was clearly error to allow defendants to renew their motions after they had presented evidence or participated in the defense.

Since the case will have to be retried, we do not pass on the question whether plaintiffs made a *prima facie* case. However, the trial judge was evidently of the opinion that they had done so; otherwise he would not have denied the motions of two of the defendants and required them to proceed to produce evidence in support of their answers.

■ ■ In his original counterclaim Morris had a claimed balance of $1,000 due for architectural services. He amended his counterclaim during the trial to an account stated, thus assuming the burden of proving, by a preponderance of the evidence, each of the elements of the action of an account stated. Morris testified that he gave instructions to the firm's chief bookkeeper to bill the Karses in the amount of $1,000, but the original of the statement was not produced at the trial, nor was any notice to produce the original served upon plaintiffs. Neither of the plaintiffs was called under section 60 of the Civil Practice Act during the trial: no testimony was offered to show why the

person who was in charge of the firm mailing did not testify at the trial. The mere dictating of a letter and the custom of mailing are not sufficient to show receipt of a letter. State Bank of East Moline v. Standaert, 335 Ill. App. 519.

Morris further testified that Mr. Kars "never objected to any portion of the work we did. He was completely happy with it. There was some objection to the floor covering but everybody agreed that it was acceptable." Kars, however, had testified, in connection with his main suit, that he had become obligated to a number of firms for various types of repair necessitated by the defective roofing work; in addition some of his store merchandise had become damaged as the result of the leaking roof. More eloquent, indeed, than plaintiff's testimony is his action in instituting suit to recover damages for what he considered faulty construction of his building.

██ ██ Defendant counsel argue that the payment by the plaintiffs of the judgment entered against them on the counterclaim has caused it, if not indeed the entire case, to be moot as to Morris. But the law is that a counterclaim is a separate and distinct cause of action. Wilson v. Tromly, 404 Ill. 307. In the case before us, the counterclaim was for an account stated for the balance of the architect's fee; there was a separate pleading, in effect a separate trial upon the counterclaim, and a separate judgment order. The payment of the counterclaim does not in any way affect the issues in the main case. The payment after judgment is upon no different footing than if plaintiffs had paid the architect his fee in full before the main suit was filed. It should be pointed out that the counterclaim issues involve only one of the three defendants; the other two defendants were paid in full before the suit was filed. The payment of the judgment on the

counterclaim cannot result in making the main case moot as to the one counterclaiming defendant.

Defendants' contention that plaintiffs' payment of the judgment was "voluntary" suggests that the word means different things to different people. Plaintiffs' counsel appeared before Judge Fisher on a motion for leave to file their motion to vacate the various judgments entered in the cause, including the judgment on the counterclaim. When Morris' attorney objected to the motion, the court, upon his insistence, refused to allow it unless the order granting leave to file expressly provided that the execution of the judgment upon the counterclaim would not be stayed—this despite the provision of the Practice Act (Ill. Rev. Stat. 1955, ch. 110, sec. 68.3, par. 2) that "a motion filed in apt time stays execution, . . ." At that stage of the proceedings plaintiffs had two courses of action open to them: to start an appeal from the judgment and file a supersedeas bond; or to press their motion to vacate the judgments before considering the question of appeal. To adopt the first course would mean embarking upon an expensive and time-consuming appellate procedure when there was still a good chance, or so plaintiffs' counsel felt, that they would be successful in their endeavor to have the various judgments vacated. Without the protection of section 68.3, paragraph 2 of the Practice Act, plaintiffs' counsel again had to make a choice between two courses of action—whether to pay the judgment or permit a levy. The judgment was paid, not because plaintiffs acquiesced in the decision of the trial court and the judgment subsequently entered thereon, but because they were under a legal and practical compulsion to pay it; they felt they could not afford a levy upon the goods, wares, merchandise and fixtures of their place of business. In the early case of Richeson v. Ryan, 14 Ill. 74, it was held that the payment or satisfaction of a

226

money judgment before an execution issues was not a bar to writ of error or appeal. The Richeson case has not been overruled and has been followed in an unbroken line of decisions: Lott v. Davis, 262 Ill. 148; Jacksonville Hotel Building Corp. v. Dunlap Hotel Co., 350 Ill. 451; First National Bank of Jonesboro v. Road District No. 8, 389 Ill. 156. In the Richeson case the court said: "If the judgment had been collected by execution, there would not be a doubt of the right of Richeson to prosecute the writ of error. A payment made under such circumstances would be compulsory, and would not preclude him from afterwards reversing the judgment, if erroneous, and then maintaining an action to recover back the amount paid. The payment in question must equally be considered as made under legal compulsion. The judgment fixed the liability of Richeson, and he could only avoid payment by procuring its reversal. He was not bound to wait until payment should be demanded by the sheriff. He was at liberty to pay off the judgment at once, and thereby prevent the accumulation of interest and costs. By so doing, he did not waive his right to remove the record into this court, for the purpose of having the validity of the proceedings tested and determined."

For the reasons indicated, the judgments are reversed, and the cause remanded for a new trial.

Reversed and remanded.

NIEMEYER, P. J. and BURKE, J., concur.