**Ramiro HERNANDEZ, Petitioner,**

v.

**Keith COOPER, Warden, Joliet Correctional Center, Respondent.**

No. 97–C–1296.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 2, 1998.

Ramiro Hernandez, Joliet, IL, pro se.

Joel T. Pelz, Jerold Sherwin Solovy, Susan E Moore, Jenner & Block, Chicago, IL, for Ramiro Hernandez.

Chief of Criminal Appeals, Illinois Attorney General's Office, Chicago, IL, for Illinois Department of Corrections.

Catherine F. Glenn, Illinois Attorney General's Office, Chicago, IL, for Keith Cooper.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Ramiro Hernandez petitions this Court under 28 U.S.C. § 2254 for a writ of habeas corpus. Following a jury trial, Hernandez was convicted of murder and armed violence. Hernandez raises six issues in his habeas petition that he claims entitle him to relief: 1) the state court's failure to sever his joint trial resulted in harmful constitutional error; 2) the state court denied his right to be acquitted absent proof of guilt beyond a reasonable doubt; 3) Hernandez was compelled to testify and the state court erred in concluding that his testimony waived his right to a directed verdict; 4) prosecutorial misconduct infected the fact-finding and sentencing processes; 5) the state court relied on inaccurate and highly prejudicial information in imposing an extended sentence; and 6) he received constitutionally ineffective assistance of trial and appellate counsel. After thorough consideration of Hernandez's claims, this Court denies the petition for a writ of habeas corpus.

### RELEVANT FACTS[1]

#### A. Murder of Jorge Orosco

At approximately 1:00 a.m. on January 16, 1979, Jorge Orosco was shot and killed while walking on Spaulding Avenue in Chicago, Illinois. On February 6, 1979, police arrested Daniel Santisteven for an unrelated crime—the murder of Gilbert Santiago. When the police searched Santisteven's home, they found numerous firearms, including a .38 caliber revolver which was later identified as one of the weapons used to murder Orosco. Record ("R."). at 255–62. While in custody for Santiago's murder, Santisteven admitted shooting Orosco twice and implicated Ramiro Hernandez as well. That same day, police arrested Hernandez in connection with the Orosco shooting. Hernandez, however, denied any involvement, claiming that he was home sleeping at the time of the shooting.

Prior to trial, Santisteven's counsel moved to suppress Santisteven's statement and the guns retrieved from Santisteven's bedroom. The trial court held a pretrial hearing on the motions to suppress, but neither Hernandez nor his attorneys attended. The trial court ultimately denied Santisteven's motion. In addition to evidence on the merits, the trial court heard evidence about an alleged deal between Santisteven, the police, and the State's Attorney's Office. Specifically, Santisteven testified that the police told him that if he implicated Hernandez in the Orosco shooting and testified against Hernandez, the police would "take care of" the gun charge and ask the State's Attorney to drop the Santiago murder charge. Santisteven complied and the State dropped both charges before trial. Similarly, Assistant State's Attorney Mark Rokoczy told Santisteven that if he testified against Hernandez, he would tell the court that Santisteven had cooperated, and recommend a reduction in Santisteven's charge or that his sentence be served in a minimum security prison.

Hernandez filed a pretrial motion to sever the joint trial, claiming that the introduction of Santisteven's statement would violate Hernandez's right to confrontation under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620,

---

1. Unless otherwise indicated, the facts are gleaned from the Illinois Appellate Court's unreported opinion, *People v. Hernandez,* Nos. 80–847 & 80–1879 (Ill.App.Ct. Aug. 24, 1983). *See Hockett v. Duckworth,* 999 F.2d 1160, 1165 (7th Cir.1993) ("Under 28 U.S.C. § 2254(d), we presume that state court findings of fact are correct if the findings are made after a hearing on the merits, and are fully supported by the record.").

20 L.Ed.2d 476 (1968). After the State agreed to redact all references to Hernandez in Santisteven's statement, the trial court denied Hernandez's motion. R. at 302.

Hernandez also filed a motion in limine to preclude the State from referencing gang activity. In response, the prosecutor indicated that he did not intend to introduce evidence of the defendants' gang activity, but left the issue open with regard to cross-examination. R. at 315–16. The trial court gave no explicit ruling, but stated "All right, counsel, I think that should satisfy you." R. at 316.

The State presented the following evidence at the trial. Angel Cruz testified that while walking down Homan Avenue, one block west of Spaulding, he heard two or three shots followed by more shots. After hearing the shots, Cruz walked toward the alley between Homan and Spaulding and saw two figures running through the alley. Cruz testified that he recognized one of the persons as Hernandez, but could not identify the other individual.

Officer Joe Rodriguez testified that when he and other officers arrested Hernandez, they searched Hernandez and the area around him, but found no evidence implicating him in the shooting. R. at 554–57. Officer Eshoo testified that Santisteven confessed that he saw Orosco walking down the street, and when Orosco fell, Santisteven shot him twice. R. at 386–87. Assistant State's Attorney Rokoczy read Santisteven's incriminating statement to the jury, eliminating any reference to Hernandez's role in the crime. In the statement, Santisteven admitted shooting Orosco twice with a .38 caliber revolver.

John Sadunas, a firearms examiner with the Chicago Police Department, testified that three of the six bullets recovered from the victim's body were fired from the .38 caliber weapon that police had recovered from Santisteven's room. He further testified that the remaining three bullets came from another, unidentified .38 caliber revolver. R. at 643–45.

The State rested and Hernandez's counsel moved for a directed verdict, arguing that the State had not proved Hernandez guilty beyond a reasonable doubt. The trial court denied the motion. R. at 674. Hernandez's counsel rested without presenting any evidence and renewed his motion for a directed verdict, without success. R. at 677–79. Hernandez's counsel then asked the court to instruct the jury that Hernandez's defense had rested and that all evidence regarding Hernandez was concluded, but the trial court refused.

The trial proceeded and Santisteven took the stand. Santisteven testified that on January 16, 1979, at roughly 12:50 a.m., he and Hernandez were walking through an alley when they saw Orosco walking north on Spaulding Avenue. Hernandez and Santisteven ducked into the alley and, as Orosco walked past, Hernandez walked up to him and shot him five times. Hernandez then ran back into the alley towards Santisteven and said, "go ahead, shoot him." Santisteven complied, shooting Orosco two or three times as he lay on the ground. Hernandez and Santisteven then turned and ran down the alley. Santisteven also testified that Hernandez was carrying a .38 caliber revolver that belonged to Santisteven. Finally, Santisteven testified that he had no reason to shoot Orosco and that Hernandez shot Orosco because he thought Orosco was a Latin King. R. at 694–708.

Hernandez's counsel moved for a mistrial, arguing that Santisteven's incriminating testimony denied Hernandez a fair trial. R. at 732. The trial court, however, denied the motion. R. at 733. Hernandez's counsel then indicated to the trial court that Hernandez would testify to rebut Santisteven's testimony and moved to limit the scope the prosecution's cross-examination. R. at 735. Hernandez testified that he did not shoot Orosco. On cross-examination, Hernandez claimed that he had been at home sleeping at 1:00 a.m. on January 16, 1979. Hernandez also denied being a member of the Imperial Gangsters and denied ever wearing Imperial Gangster insignia. R. at 765.

The State then informed the court of its plan to call Officer O'Quinn to impeach Hernandez's testimony. R. at 768. Hernandez's counsel reminded the court of his motion in

limine with respect to potential gang evidence and the State's agreement to limit its presentation of testimony on this issue R. at 771. The trial court allowed the State to proceed. R. at 774. The State called Officer O'Quinn, who testified that he saw Hernandez wearing an Imperial Gangster sweater and identified a photograph of Hernandez wearing an Imperial Gangster sweater. R. at 783–85.

The jury ultimately found Hernandez and Santisteven guilty of armed violence and murder. The trial court sentenced Hernandez to two concurrent sentences of 50 years for murder and armed violence. Santisteven received two concurrent sentences of 25 years for murder and armed violence.

On direct appeal, Hernandez asserted that 1) the trial court improperly admitted evidence of unrelated crimes; 2) improper comments by the prosecution and prosecutorial misconduct violated his right to a fair trial; 3) the trial court erred in failing to sever the joint trial; 4) the trial court erred in denying his motion for a directed verdict at the close of his case; and 5) the trial court erred in sentencing him for two separate offenses. In an unpublished order, the Illinois Appellate Court vacated the armed violence conviction as a lesser-included offense, but affirmed the murder conviction and sentence. *Hernandez*, Nos. 80–847 & 80–1879 (Ill.App.Ct. Aug. 24, 1983). Claiming that appellate counsel failed to notify him of the time to appeal, Hernandez did not file a petition for leave to appeal with the Illinois Supreme Court.

Almost four years later, Hernandez filed a *pro se* petition for post-conviction relief, alleging ineffective assistance of trial and appellate counsel. Hernandez argued that his trial counsel rendered deficient representation by 1) failing to argue antagonistic defenses in his severance motion; 2) forcing Hernandez to testify at trial; 3) failing to object to the admission of weapons recovered from Santisteven's home; 4) failing to interview alibi witnesses; and 5) failing to argue that Santisteven's counsel prejudiced Hernandez when counsel elicited incriminating statements from Santisteven during the suppression hearing. Hernandez then alleged ineffective assistance of appellate counsel

based on appellate counsel's failure to argue ineffective assistance of trial counsel, and appellate counsel's failure to timely inform Hernandez of the direct appeal's denial.

The post-conviction court summarily dismissed Hernandez's petition, finding that waiver and res judicata precluded consideration of the ineffectiveness claims. Hernandez then appealed, and on June 19, 1996, the appellate court affirmed the dismissal of Hernandez's post-conviction petition.

## *ANALYSIS*

### I. Hernandez's Challenge to the Facts

■ Hernandez initially challenges the factual findings set forth in the appellate court's opinion. Under 28 U.S.C. § 2254(e)(1), in the absence of a showing by the petitioner of clear and convincing evidence to the contrary, a determination of a factual issue by a state court is presumed to be correct for the purposes of federal habeas review. *See, e.g., Abrams v. Barnett*, 121 F.3d 1036, 1038 (7th Cir.1997). Hernandez must rebut this presumption with clear and convincing evidence. *Id.*

Hernandez asks this Court to review the full record and decide whether the appellate court made unreasonable factual determinations in finding that 1) the trial court had no indication of antagonistic defenses; and 2) Hernandez's conviction rested on "overwhelming evidence." According to Hernandez, the record establishes by clear and convincing evidence that there were numerous indications before and throughout the trial that Santisteven's defense was antagonistic to Hernandez's defense. In addition, Hernandez claims that by the time the State rested its case against Hernandez, the evidence of Hernandez's guilt was not "overwhelming."

Hernandez's first argument misrepresents the appellate court's factual findings. On direct appeal, the appellate court held that its review of the severance issue was limited to those arguments raised in the defendant's motion for a separate trial. Specifically, the appellate court stated that "Hernandez argued both in his pretrial motion and at trial that the introduction of this statement by

Santisteven would violate his right to confrontation as established by *Bruton v. United States,* *[*391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968*)]* [citations omitted]." *Hernandez,* at p. 7. But the appellate court never made any finding on the antagonistic defense claim. Instead, that court concluded that Hernandez waived the claim by failing to raise it in his severance motion. Hernandez conceded as much when, in his post-conviction petition, he argued that his trial counsel's failure to argue antagonistic defenses prevented the appellate court from reviewing this theory on direct appeal.

■ Similarly, Hernandez's second argument does not challenge the appellate court's factual findings, but rather challenges the legal conclusion drawn from the facts. Indeed, Hernandez reasserts the same facts that were relied upon by the appellate court and then proceeds to draw a contrary conclusion. Hernandez does not allege any inaccuracies or incompleteness in the factual summaries before the court, *United States ex rel. Green v. Greer,* 667 F.2d 585 (7th Cir.1981), but rather questions whether the evidence was sufficient as a matter of law to uphold the guilty verdict. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).[2] A district court reviewing a habeas petition, however, is not required to make an independent examination of the state trial court record where the petitioner's "pleadings and briefs do not contradict but actually confirm the state court factual summary." *Blenski v. LaFollette,* 581 F.2d 126, 128 (7th Cir. 1978); *see also Green,* 667 F.2d at 590 (we "need not examine the full trial record where a habeas corpus petitioner alleges insufficiency of the evidence without identifying inaccuracies or incompleteness in the factual summaries before the court."). Therefore, we find that Hernandez's challenges are insufficient to rebut the presumption of accuracy afforded the appellate court's factual findings.

## II. Exhaustion and Procedural Default

### 1. Standards

Before considering the merits of Hernandez's claims, this Court must first determine whether Hernandez has exhausted all available state remedies and fairly presented his constitutional claims to the state courts. *Momient–El v. DeTella,* 118 F.3d 535, 538 (7th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 448, 139 L.Ed.2d 384 (1997). If Hernandez fails to satisfy either of these requirements, "the petition is barred either for a failure to exhaust state remedies or for a procedural default." *Henderson v. Thieret,* 859 F.2d 492, 496 (7th Cir.1988). The State concedes that Hernandez exhausted all available state remedies, but argues that five of Hernandez's six claims are procedurally defaulted. Accordingly, the threshold inquiry is whether any of Hernandez's claims are barred from habeas review due to procedural default.

■ The procedural default inquiry focuses on whether the petitioner's federal claims were "fairly presented" to the state courts. *Jones v. Washington,* 15 F.3d 671, 675 (7th Cir.1994); *see also Verdin v. O'Leary,* 972 F.2d 1467, 1474 (7th Cir.1992). Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir.1992).

■ Alternatively, procedural default occurs where the state did not address the petitioner's federal claims because the state court's decision rested on an adequate and independent state law ground. *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). A petitioner who fails to meet the state's procedural requirement for presenting the federal claims deprives the state courts of an opportunity to address those claims. *See Coleman,* 501 U.S. at 731–32, 111 S.Ct. 2546. Notwithstanding a procedural default, habeas review may still be available if the petitioner can show cause for the default and actual prejudice, or demonstrate that a failure to consider the claim will

---

**2.** We address Hernandez's sufficiency claim later in this opinion.

result in a fundamental miscarriage of justice. *Id.* at 750, 111 S.Ct. 2546.

## 2. Procedural Default Analysis

### (a.) Severance

■ Hernandez first argues that the state court's failure to sever his joint trial resulted in harmful constitutional error. We agree with the State, however, that this claim is procedurally defaulted. In his direct appeal, Hernandez argued that because Santisteven's defense was antagonistic, the trial court 1) abused its discretion in denying his severance motion; and 2) erred in failing to sever the defendants' trial sua sponte. The appellate court noted that under Illinois law, its review was limited to the arguments that the defendant raised in his motion for a severance. In his motion for a severance, Hernandez argued only that the introduction of Santisteven's statement would violate his Sixth Amendment right to confront the witness as established by *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Because Hernandez failed to raise the issue of antagonistic defenses in his severance motion, the appellate court declined to address it on direct appeal, confining its analysis to Hernandez's *Bruton* challenge. We find that the Illinois court resolved Hernandez's mutually antagonistic defense on independent and adequate state grounds.

"Illinois courts generally speak of [mutually antagonistic defenses] as a state law issue, not a constitutional issue." *United States ex rel. Lewis v. Gilmore,* 1994 WL 478530 (N.D.Ill. Aug.31, 1994). Moreover, the rule in Illinois is clear: the appellate court's re-

view of the trial court's severance determination is limited to the arguments set forth in the severance petition. *Compare People v. Bean,* 109 Ill.2d 80, 92 Ill.Dec. 538, 485 N.E.2d 349 (Ill.1985) (finding that the defendant's motion for severance was "sufficiently specific" in setting forth details of antagonistic defense) *with People v. Lee,* 87 Ill.2d 182, 57 Ill.Dec. 563, 429 N.E.2d 461, 464 (1981) (while his codefendant's defense proved to be mutually antagonistic, the appellant's motion for severance did not "actively and specifically point out the antagonism of the defenses" and was, therefore, properly rejected). Hernandez does not dispute that his severance motion failed to argue that antagonistic defenses warranted separate trials or that the Illinois appellate court's application of the general rule confining its review was applied even-handedly. Therefore, the appellate court's disposal of the issue on independent and adequate state grounds precludes this Court's review on a petition for habeas relief. *See United States ex rel. Kubik v. Welborn,* No. 92 C 6653, 1993 WL 98235, at *3 (N.D.Ill. Apr.1, 1993) (finding Illinois state court's denial of motion to sever an adequate and independent state law ground barring habeas corpus review).[3]

■ If a claim has been procedurally defaulted, we nevertheless address its merits if the petitioner demonstrates cause for his procedural error and resulting prejudice. Courts have consistently recognized that claims of ineffective assistance of counsel may serve as appropriate "cause" in this analysis, if the petitioner raised the specific claim of ineffective assistance below that he

---

**3.** The State further assert that Hernandez never alerted the state courts to the federal nature of his claim. An examination of the briefs Hernandez submitted to the state courts reveals that he did not rely upon relevant federal case law; cite state cases that applied a federal constitutional analysis; use phrases calling to mind a specific constitutional right; or allege a pattern of facts within the mainstream of constitutional litigation. *See Verdin v. O'Leary,* 972 F.2d 1467, 1473–74 (7th Cir.1992). A review of pertinent Illinois case law—including the case law cited in Hernandez's state courts briefs—reveals that Illinois courts resolve severance issues as matters of state law. *See United States ex rel. Lewis v. Gilmore,* 1994 WL 478530 (N.D.Ill. Aug.31,

1994) (summarizing Illinois state courts' severance analysis). These cases do not employ a constitutional analysis, nor do they cite the plethora of federal jurisprudence addressing the constitutional concerns raised by denied severance motions. Hernandez's supplemental, pro se, post-conviction petition, however, does argue that his trial counsel's performance was constitutionally deficient because he failed to argue antagonistic defenses, which deprived him of his right to a fair trial under the Fourth Amendment. We need not determine whether this statement sufficiently alerted the state court to the federal nature of his crime, as we have resolved this issue on alternate grounds.

is asserting as cause in his habeas petition. *Momient–El v. DeTella,* 118 F.3d. 535, 541 (7th Cir.1997). While Hernandez argued in his post-conviction petition that his counsel rendered ineffective assistance for failing to raise the antagonistic defense issue at trial, he does not present any argument in ·his numerous briefs to this Court that this shortcoming constitutes cause to excuse his procedural default. As such, this argument is not property before us. *See Id.* at 542.

 Hernandez contends, however, that he is innocent—apparently in an attempt to achieve substantive review pursuant to the fundamental miscarriage of justice exception, which requires a showing of actual innocence. However, Hernandez fails to direct this Court's attention to any evidence that would rebut Cruz's testimony placing Hernandez at the scene of the crime (and directly contradicting his alibi testimony at trial) or Santisteven's claim that Hernandez was the instigator in Orosco's murder. Therefore, this Court is barred from reviewing the substance of Hernandez's procedurally-defaulted, "mutually antagonistic" severance challenge.

 Even if Hernandez had not procedurally defaulted this claim, we would have found it lacking in merit. In *Zafiro v. United States,* the United States Supreme Court affirmed the Ninth Circuit's ruling that habeas relief was not warranted despite the petitioner's showing that his codefendant's defense was antagonistic. 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). The Court ruled that "[m]utually antagonistic defenses are not prejudicial per se" and that severance is required only when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539, 113 S.Ct. 933. This risk is apparent when defendants have markedly different degrees of culpability, when evidence probative of guilt but inadmissible against the defendant is nevertheless admitted against a codefendant, or if exculpatory evidence otherwise admissible in the defendant's trial is unavailable in a joint trial, such as when the source of the exculpatory evidence is the codefendant's wife, who could not be forced to testify in a joint trial. *Id.* (noting that these examples are not exclusive).

Hernandez argues that Santisteven's testimony compromised his trial right to cross-examine Santisteven as a hostile witness, was constitutionally prejudicial, and therefore warrants habeas relief. This argument, however, cannot be squared with the *Zafiro* court's finding that

> a fair trial does not include the right to exclude relevant and competent evidence. A defendant normally would not be entitled to exclude the testimony of a former codefendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant.

*Id.* at 540, 113 S.Ct. 933. Therefore, even if Hernandez's argument was properly before this Court, we would find that the trial court's denial of the severance motion did not result in a constitutionally unfair trial.

 This is not the end of our severance inquiry because Hernandez's *Bruton* challenge—an argument Hernandez only half-heartedly asserts—is properly before us. Hernandez claims that the State's admission of Santisteven's confession violated his Sixth Amendment right to confront a witness against him. We disagree. Under *Bruton,* severance may be warranted where a codefendant's extrajudicial statement implicates the defendant. *See U.S. ex rel. Lewis v. Gilmore,* 1994 WL 478530, at *2 (N.D.Ill. 1994). However, the State's agreement to properly redact all references to the defendant cures any *Bruton* concerns. *Bruton,* 391 U.S. at 130, 88 S.Ct. 1620. In presenting Santisteven's statement to the jury, the State eliminated all references to Hernandez and any inference of a second gunman. The Illinois appellate court found as much and we cannot say that their ruling was either contrary to, or an unreasonable application of constitutional law. Therefore, Hernandez's *Bruton* challenge, though properly preserved for habeas review, fails on the merits.

### (b.) Sufficiency of the Evidence

 In Claim II, Hernandez alleges that the state court denied his constitutional right

to be acquitted absent sufficient proof of guilt beyond a reasonable doubt. Once again, the State contends that Hernandez's sufficiency of the evidence claim is procedurally defaulted because the appellate court found the issue waived. To bar federal habeas review, the state court actually must have relied on the procedural bar as an independent basis for disposition of the case. *Willis v. Aiken,* 8 F.3d 556, 561 (7th Cir.1993). Thus, "if a state court did not reach a federal issue because it applied, evenhandedly, a state procedural rule, the matter is closed to the federal habeas court absent a showing of cause and prejudice." *Id.* (citing *Wainwright v. Sykes,* 433 U.S. 72, 90–91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).

██ The appellate court found that when Hernandez presented evidence (his own testimony) after his motion for a directed verdict, he waived review of the issue on appeal. *Citing People v. Washington,* 23 Ill.2d 546, 179 N.E.2d 635, 636 (Ill.1962) ("a motion for directed verdict made at the close of the plaintiff's case is waived when the defendant introduces evidence after the motion has been denied."); and *People v. Husar,* 22 Ill.App.3d 758, 318 N.E.2d 24, 31 (1974) (finding that the defendant's testimony waived "whatever error the trial court committed in ruling on the [directed verdict] motion."). By using waiver to dispose of the issue, the appellate court employed an independent and adequate state procedural rule that we must honor by refusing to review the claim. *Coleman,* 501 U.S. at 729–30, 111 S.Ct. 2546; *Aliwoli v. Gilmore,* 127 F.3d 632, 634 (7th Cir.1997); *Gonzalez v. DeTella,* 127 F.3d 619, 622 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1325, 140 L.Ed.2d 487 (1998).

Hernandez, however, challenges the appellate court's grounds for finding waiver. In support of his claim, Hernandez cites *Kars v. Knauf,* 13 Ill.App.2d 219, 141 N.E.2d 410, 412–13 (1957), which provides that while a defendant may not renew a directed verdict motion after introducing evidence, he may file a second motion for a directed verdict in light of all of the evidence presented at trial. *See also Popadowski v. Bergaman,* 304 Ill. App. 422, 26 N.E.2d 722 (1940) (finding that an appellate court may review a second motion for directed verdict in view of all the evidence).[4] Because the appellate court improperly ruled that Hernandez's motions for directed verdict were waived under *Washington* and *Husar,* and not simply subject to review in light of all the evidence introduced at trial under *Kars* and *Popadowski,* Hernandez claims that habeas must be granted.

██ We reject Hernandez's argument. Hernandez ignores the Supreme Court's explicit mandate that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). "A federal court may not issue [a] writ on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *see also Williams v. Lane,* 826 F.2d 654, 659 (7th Cir.1987) ("Federal courts do not sit to correct errors made by state courts in the interpretation and application of state law."). Hernandez's argument clearly centers on a perceived error in the application of state law. Because this Court is barred from sitting as a superappellate tribunal of the state court's judgment, Hernandez's petition for habeas on this basis must be denied.[5] *Tyson v. Trigg,* 50 F.3d 436, 438 (7th Cir.1995).

---

4. A review of all the evidence at trial would include, of course, Santisteven's testimony implicating Hernandez. *See Husar,* 318 N.E.2d at 32 (finding that evidence introduced by a defendant may be considered by the trier of fact and may supply deficiencies in the state's proof).

5. This Court likewise rejects Hernandez's contention that the direct and post-conviction appellate courts' review of the sufficiency of the evidence opens the door to federal habeas review of this claim. Hernandez relies on *Patrasso v. Nelson,* 121 F.3d 297 (7th Cir.1997), asserting that federal habeas review is available because the direct and post-conviction appellate courts reviewed the merits without relying on a state procedural bar. Hernandez reads *Patrasso* too broadly: that case merely holds that "[f]ederal review is precluded only by procedural forfeitures, not res judicata concerns." *Id.* at 301 (quoting *Gomez v. Acevedo,* 106 F.3d 192, 196 (7th Cir.1997), and *Emerson v. Gramley,* 91 F.3d 898, 903 (7th Cir. 1996)). In the instant case, the state court found that waiver, not res judicata barred Hernandez's claim. As such, *Patrasso* is not applicable.

■ Federal habeas review may still be available, however, if Hernandez can show cause for the default and actual prejudice resulting from the alleged violation, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. Hernandez's bare allegation that cause should be found in the extraordinary improper events occurring after his case was over does not allege sufficient cause.[6] Moreover, Hernandez asserts in conclusory terms that he suffered profound prejudice. *See United States ex rel. Thirston v. Gilmore,* 986 F.Supp. 491, 499 (N.D.Ill.1997) ("purely conclusory assertions are insufficient to satisfy the cause and prejudice exception to the doctrine of procedural default."). Hernandez has shown no cause and prejudice, nor has he demonstrated that our failure to consider the claim will result in a fundamental miscarriage of justice. Accordingly, habeas relief on this issue is denied.

### (c) Directed Verdict Waiver

Similarly, Claim III is procedurally defaulted. In Claim III, Hernandez contends that the appellate court committed constitutional error by concluding that he waived his Fifth Amendment right not to testify against himself, and thereby waived his right to a directed verdict. Specifically, Hernandez asserts that when the State rested, he exercised his Fifth Amendment right not to present a defense, including his right not to testify. Hernandez contends that in doing so, he properly preserved his right to a di-

rected verdict. Acknowledging his subsequent testimony, Hernandez argues that the waiver of his Fifth Amendment right requires voluntariness and because he was compelled to testify on rebuttal, his testimony cannot preclude his right to review his directed verdict motion.

Here, Hernandez again challenges, albeit in different constitutional terminology, the appellate court's finding of waiver. Claim III differs from Claim II only in terms of the constitutional theory used to attack the appellate court's finding of waiver. However, regardless of the particular constitutional theory advanced, the appellate court's ruling rested on an adequate and independent state ground. As previously stated with respect to Claim II, we are bound to respect the appellate court's determination. Further, Hernandez has shown no cause and prejudice, nor has he demonstrated that our failure to consider the claim will result in a fundamental miscarriage of justice. Accordingly, habeas relief on this issue is denied.

### (d.) Sentencing

■ The State next contends that Hernandez's challenge to his sentence is not cognizable on federal habeas review. In the alternative, the State asserts that the claim is procedurally defaulted because Hernandez never raised this issue in state court. Because we agree with the latter contention, we will not review Hernandez' claim on the merits.[7]

---

6. The only possible exception is Hernandez's ineffective assistance of counsel claim. A failure to raise this claim on direct appeal to the state appellate court will not be fatal if he properly raised it on post-conviction review. *Momient–El,* 118 F.3d at 539–40. Nonetheless, the claim presented on post-conviction review must be the very same specific ineffective assistance claim raised in the habeas petition; otherwise, it is procedurally defaulted. *Id.* As discussed further in this opinion, Hernandez failed to set forth any factual allegations supporting his ineffectiveness claim. Accordingly, his ineffectiveness claim cannot be used as a basis for cause.

7. Generally, federal courts will not review a sentence that falls within statutory limits. *Koo v. McBride,* 124 F.3d 869, 875 (7th Cir.1997); *Williams v. Duckworth,* 738 F.2d 828, 831 (7th Cir.1984). As long as the sentence is within the

limits set by state law, the severity of the sentence imposed cannot serve as a basis for federal habeas relief. *United States ex rel. Sluder v. Brantley,* 454 F.2d 1266, 1269 (7th Cir.1972). Contrary to the State's assertions, however, Hernandez goes beyond merely challenging the imposition of a 50–year extended sentence. Rather, Hernandez's claim focuses upon the trial court's reliance on inaccurate and highly prejudicial information. *See United States ex rel. Welch v. Lane,* 738 F.2d 863, 864 (7th Cir.1984) (citing *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), and *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)) ("The Supreme Court has held that convicted defendants have a due process right to be sentenced on the basis of accurate information.").

■ While Hernandez is correct in asserting that such a constitutional violation is cognizable for federal habeas review, his claim still fails because he never raised the claim in state court. On direct appeal, Hernandez argued that the 50–year sentence exceeded the statutory maximum sentence. Therefore, Hernandez's sentencing challenge to the state court rested entirely on state law.

■ A habeas petitioner fails to alert the state court to the federal nature of the claim "when the cited cases articulate only state law principles and available federal precedent has been omitted." *Id.* at 1475; *see also Bocian v. Godinez,* 101 F.3d 465, 469 (7th Cir.1996) (finding that while the *Verdin* test does not require specific citation to constitutional provisions, the petitioner must still set forth the nature of the constitutional claim with particularity). In *Verdin v. O'Leary,* the Seventh Circuit adopted a four factor test to determine whether a petitioner fairly presented the federal nature of a claim to the state courts for review:

> If the petitioner's argument to the state court did not: (1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar factual situation; (3) assert the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts that is well within the mainstream of constitutional litigation, then this court will not consider the state courts to have had a fair opportunity to consider the claim. However, the presence of any one of these factors, particularly factors (1) or (2), does not automatically avoid a waiver; the court must consider the facts of each case.

972 F.2d at 1474–75 (quoting *Daye v. Attorney General of New York,* 696 F.2d 186, 194 (2nd Cir.1982) (en banc)).

Hernandez's claim does not satisfy any of the four presentment factors described in *Verdin.* On direct appeal, Hernandez argued only that his sentence exceeded the statutory maximum. No federal case law was cited, no state case law employing a constitutional analysis was cited, the claim

does not call to mind a specific constitutional right, and no facts well within the mainstream of constitutional litigation were plead. *Green v. Peters,* 36 F.3d 602, 605 (7th Cir. 1994) ("[B]oth the operative facts and the controlling legal principles of a constitutional claim must be submitted to the state court."). Having denied the state court any opportunity to address the alleged constitutional deficiencies in the trial court's sentencing proceedings, Hernandez cannot now present his claim to this Court for review.

■ Hernandez further maintains that because the appellate court reviewed the merits of his claim, the instant claim is not procedurally barred. In support, Hernandez relies on *Ylst v. Nunnemaker* for the proposition that "if the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal court review that might otherwise have been available." 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Hernandez completely overlooks the context in which this rule applies. The Supreme Court explained that "[s]tate procedural bars are not immortal ... they may expire because of later actions by state courts. If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." *Id.* (citations omitted). Federal courts, therefore, cannot invoke the state procedural bar as a basis for denial of habeas review where the state court, faced with the same procedural rule, addressed the merits of the petitioner's claims.

*Ylst* is simply inapplicable to this case because Hernandez never presented his claim to the state courts. Moreover, the state courts did not address the merits of Hernandez's instant claim sua sponte. Rather, the state court focused solely upon Hernandez's state law claim. Accordingly, *Ylst* cannot save Hernandez's sentencing challenge. Because Hernandez has not established cause and prejudice, or a miscarriage of justice, Hernandez's claim is procedurally barred.

#### (e.) Ineffective Assistance of Counsel

■ Finally, the State maintains that Hernandez's ineffective assistance of counsel claim is factually deficient, and, alternatively, that this claim is procedurally defaulted. We agree that Hernandez's claim violates Rule 2(c) of the Rules Governing Section 2254 Cases and, therefore, is not reviewable by this Court. Rule 2(c) requires a habeas petitioner to "specify all the grounds for relief which are available" and "set forth in summary form the facts supporting each of the grounds thus specified."

■ In his habeas petition, Hernandez alleges in general and conclusory terms that he received ineffective assistance of counsel. This claim utterly lacks any factual basis supporting ineffectiveness of trial and appellate counsel. "Generalizations and conclusions," are insufficient, and "notice" pleading is not accepted in habeas corpus proceedings. *Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir.1970); *see O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir.1990) ("notice" pleading insufficient); *Cunningham v. Estelle*, 536 F.2d 82, 83 (5th Cir.1976) (conclusory assertions, unsupported by factual allegations, insufficient); *United States ex rel. DeCreti v. Wilson*, 967 F.Supp. 303, 307–08 (N.D.Ill. 1997) (finding vague and speculative allegations insufficient).

■ Hernandez's briefs submitted to this Court are equally barren. Not until the filing of his second reply brief did Hernandez attempt to give any content to his claim. However, in doing so Hernandez merely incorporated by reference the arguments raised in his post-conviction petition. Amd. Rp. at 19. Section 2254 and Rule 2(c), however, do not "require federal courts to review the entire state record of habeas corpus petitioners to ascertain whether facts exists which support habeas relief." *Adams v. Armontrout*, 897 F.2d 332, 333–34 (8th Cir. 1990) (affirming dismissal of habeas petition which did not describe the facts supporting the asserted grounds for relief, but simply referred the court to appellate briefs, transcripts, and the case record); *see also Moore v. Swenson*, 361 F.Supp. 1346, 1351 (E.D.Mo. 1973) (declining to review a brief filed before a state court and incorporated into a habeas petition).

Hernandez's factually deficient claim of ineffective assistance of counsel also denies the state a meaningful opportunity to answer his allegations. Consequently, the Court declines to address whether Hernandez's Sixth Amendment claim is procedurally defaulted, and denies his claim for failing to assert grounds sufficient to permit the Court to reach the merits.

Prior to addressing the merits of Hernandez's only remaining claim, we set forth the standards that guide our inquiry.

### III. Habeas Standards

■ Hernandez filed his habeas petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (AEDPA) and, therefore, the provisions of the AEDPA apply to his claims. *See Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA requires federal courts to give "greater deference to the determinations made by state courts than they were required to under previous law." *Spreitzer v. Peters*, 114 F.3d 1435, 1441 (7th Cir.1997) (internal quotations and citations omitted), *cert. denied*, —— U.S. ——, 118 S.Ct. 1060, 140 L.Ed.2d 121 (1998).

Under the AEDPA, federal courts must deny habeas relief with respect to any claim adjudicated on the merits in the state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States", 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

■ The "contrary to" provision of § 2254(d)(1) applies to questions of law and the court reviews such issues de novo. *Lindh v. Murphy*, 96 F.3d 856, 877 (7th Cir.1996), *rev'd on other grounds*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Conversely, the "unreasonable application"

provision applies where mixed questions of law and fact arise, and "tells federal courts: Hands off, unless the [state court] judgment is based on an error grave enough to be called 'unreasonable'." *Id.* at 870. A state court reasonably applies clearly established Supreme Court case law if its application is "at least minimally consistent with the facts and circumstances of the case." *Spreitzer,* 114 F.3d at 1442; *see also Hennon v. Cooper,* 109 F.3d 330, 335 (7th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 72, 139 L.Ed.2d 32 (1997); *Hall v. Washington,* 106 F.3d 742, 748–49 (7th Cir.) ("[t]he statutory 'unreasonableness' standard allows the state court's conclusion to stand if it is one of several equally plausible outcomes."), *cert. denied,* —— U.S. ——, 118 S.Ct. 264, 139 L.Ed.2d 190 (1997). Having set forth the applicable standard, we will now address Hernandez's remaining claim of prosecutorial misconduct.

In Claim IV, Hernandez alleges that the prosecutor's conduct denied him a fair trial. First, Hernandez alleges that the prosecution "broke deals" with Hernandez's counsel. According to Hernandez, the State "agreed" to redact all references to Hernandez in Santisteven's statement. Allegedly in violation of that agreement, the prosecution told the jury, "Mr. Kagan speaks out of both sides of his mouth because he knows that statement was presented to you in partial form ... [F]or legal reasons you could not hear that whole story the first time Eshoo testified and Rokoczy testified... [T]he casket over Jorge Orosco.... That's what we are talking about, and they want to flower it up with legal jargon and nonsense." Moreover, the State allegedly broke an agreement not to introduce evidence of gang activity and gang affiliation, and to limit its rebuttal cross-examination to the narrow scope of Hernandez's direct rebuttal testimony.

Hernandez asserts that the State improperly questioned and ridiculed Hernandez about his opinion as to the veracity of the other witnesses at trial, about his opinion of the characteristics of Santisteven's guns, and about his decision not to call alibi witnesses. Hernandez further maintains that during closing arguments, the prosecution sought to inflame the passions of the jury by making the following statements:

> [T]he only verdict that you can bring in this case, will tell those two, as well as all of their kind, that you, and this society will not stand for the likes of them. You will tell society we will defend you, we will stand up for you, People of the State of Illinois ... because if you don't, God help us all....
>
> I have seen them parade in family members, and no-family members in trying to perpetrate frauds on juries in this courtroom.... I'm not intimidated by the punks out in the gallery.... I'm not intimidated by the Imperial Gangsters, nor am I intimidated by the Latin Kings, and by God I hope the jury isn't intimidated by it. We're talking about our city, we are talking about our country, we are talking about the United States of America. Well, we have had it. Our office had it.
>
> We're not plea bargaining with these people.... I'm fed up with looking at the bodies of the young girls and boys who have been shot and mutilated in the street of the northwest side of the city, and I'm sorry of seeing bodies mutilated from 63rd Street.

■■■■ To succeed on a prosecutorial misconduct claim, Hernandez "must demonstrate that the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Rodriguez v. Peters,* 63 F.3d 546, 558 (7th Cir.1995) (quoting *United States v. Reed,* 2 F.3d 1441, 1450 (7th Cir.1993)). As a preliminary inquiry, the allegations of prosecutorial misconduct are examined in isolation to determine if they are proper, and if so, the inquiry ends. *Id.* at 558. If the statements are improper, however, an additional inquiry is implicated and involves examining the remarks in the context of the entire record to determine if they denied the petitioner a fair trial. *Id.* "To carry this burden, [the petitioner] must show that the misconduct complained of affected the outcome of the trial—i.e., caused the jury to reach a verdict of guilty, when otherwise it might have reached a verdict of not guilty." *Id.* (quoting *United States ex rel. Shaw v. DeRobertis,* 755 F.2d

1279, 1281 n. 1 (7th Cir.1985)). Five factors are considered in weighing the prejudicial nature of a prosecutor's comments: 1) the nature and seriousness of the prosecutorial misconduct; 2) whether the prosecutor's statements were invited by conduct of defense counsel; 3) whether the trial court instructions to the jury were adequate; 4) whether the defense was able to counter the improper arguments through rebuttal; and 5) the weight of the evidence against the defendant. *Id.* (emphasizing that proof of guilt is the most important element).

▮ Application of these factors reveals that the appellate court's ruling was neither contrary to nor an unreasonable application of Supreme Court authority. Even assuming that the prosecutor's statements were improper, the trial court instructed the jury not to consider the opening and closing arguments as evidence. Such curative instructions minimize the impact of otherwise improper remarks. As to the fifth factor— weight of evidence against the defendant— after reviewing the remarks in the context of the entire record, the appellate court concluded that the complained of remarks were not a material factor in the conviction given the overwhelming evidence of guilt. As *Rodriguez* stressed, "[t]he most important factor to be considered in determining whether the closing statement violated [the petitioner's] rights is the proof of ... guilt ... [s]trong evidence of guilt eliminates any lingering doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations." *Id.* (quoting *United States v. Gonzalez,* 933 F.2d 417, 431–32 (7th Cir.1991)).

Contrary to Hernandez's claim, the evidence against him was significant. Angel Cruz testified that he witnessed Hernandez fleeing the scene of the crime. While Hernandez argues that Cruz's testimony does not prove he was the shooter, it does directly contradict Hernandez's alibi defense. Moreover, Santisteven's testimony supplies the missing piece in Cruz's testimony, as Santisteven identifies Hernandez as the gunman. Accordingly, we cannot agree that the appel-

late court's decision on this issue was contrary to or an unreasonable application of Supreme Court precedent.

▮ Lastly, Hernandez contends that the prosecution prejudiced him by failing to disclose its alleged deal with Santisteven to the jury.[8] In *Brady v. Maryland,* the Supreme Court announced that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). "Impeachment evidence merits the same constitutional treatment as exculpatory evidence." *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1970).

▮ To succeed on his claim, Hernandez "must establish (1) that the prosecutor suppressed evidence; (2) that such evidence was favorable to the defense; and (3) that the suppressed evidence was material." *United States v. Hartmann,* 958 F.2d 774, 790 (7th Cir.1992). Evidence is not "suppressed" for *Brady* purposes if the defendant "has access to the information before trial by exercise of reasonable diligence." *United States v. Senn,* 129 F.3d 886, 891 (7th Cir. 1997) (defendant's failure to take advantage of the government's "open-file discovery" policy and to further investigate witness despite knowledge of the witness's "rap sheet" eliminated *Brady* violation claim).

In the instant case, the record contradicts any assertion that the prosecutor suppressed evidence regarding Santisteven's negotiations with the State, as this information was readily available to Hernandez. At the pretrial hearing on his motion to suppress, Santisteven testified extensively about his interactions with certain police officers and Assistant States Attorneys. Hernandez's counsel was present initially, but after the trial court delayed the hearing to await Santisteven's arrival, counsel explained that he "choose [sic] not to be here at this time" because

---

**8.** This claim appears to be procedurally defaulted as Hernandez neither raised it on its own nor in support of an ineffective assistance of counsel claim before the state courts. Because the State has not raised the argument, we will not address it here.

"neither of the motions are applicable towards my client." Ex. A at p. 4.[9]

Hernandez does not allege that the government conspired to proceed without Hernandez's counsel's presence; prevented him from obtaining a copy of this transcript before trial; or denied the existence of an understanding or deal with Santisteven. Moreover, Hernandez cannot dispute that he knew Santisteven had implicated Hernandez in his statement to police, alerting Hernandez to the possibility that Santisteven offered to testify against him in exchange for leniency. Because the pretrial hearing transcript was readily available to Hernandez, combined with Hernandez's knowledge of Santisteven's incriminating statements, he cannot establish that the prosecution suppressed material evidence in violation of *Brady*. *See United States v. White*, 970 F.2d 328 (7th Cir.1992) (finding no *Brady* violation for failure to turn over bankruptcy notes where the plaintiff had access to the bankruptcy files); *Lugo v. Munoz*, 682 F.2d 7, 9 (1st Cir.1982) (finding no *Brady* violation where "facts which petitioner alleges to have been suppressed by the Government were a matter of public record.").

### CONCLUSION

Ramiro Hernandez has raised numerous instances of alleged trial error that he claims warrants habeas relief. Admittedly, his trial was less than perfect, but this alone is insufficient to warrant habeas relief. Moreover, a number of his arguments misapprehend this Court's role on habeas review. As Judge Poser stated,

> [The petitioner] had appeal from his conviction. Federal habeas corpus does not entitle him to another. A federal court may intervene in the state criminal process, nullifying a defendant's conviction and sentence and forcing the state to try

him anew (or else simply let him go), only if the state criminal proceeding was vitiated by an infringement of one or more of a limited subset of the defendant's federal rights. If required to substitute our judgment for that of the [state] court of appeals, we might come to a different conclusion from that court. But we are not authorized to conceive of our job in that way. We are not to offer a further tier of appellate review. We are only to determine whether [the petitioner] was deprived of any of his federal rights....

*Tyson v. Trigg*, 50 F.3d 436, 438 (7th Cir. 1995). For all the foregoing reasons, this Court denies Hernandez's petition for a writ of habeas corpus. The Clerk of the Court is directed to dismiss petitioner Ramiro Hernandez's Petition for a Writ of Habeas Corpus with prejudice. This order shall constitute a final order for purposes of Fed. R.Civ.P. 58. This case is terminated.

---

9. Moreover, the trial transcript indicates that Hernandez may have been present for the duration of the hearing. It appears that initially, only Hernandez and his counsel were present, and that the trial court was waiting on Santisteven and his counsel. The transcript provides the following

> THE CLERK: Daniel Santisteven, Ramiro Hernandez on that too

THE COURT: We are waiting for who?
HERNANDEZ COUNSEL: Mr. Santisteven.
THE COURT: Oh, we have two defendants. Is the other lawyer here?
HERNANDEZ COUNSEL: He's not here yet.
Ex. A at p. 2. While the transcript describes Hernandez's counsel's departure, there is no record of whether Hernandez remained or left.